**In re John T. SLOVER, Debtor.**

**Andrea A. SLOVER, (McMurrough), Plaintiff,**

**v.**

**John T. SLOVER, Defendant.**

**Bankruptcy No. 95–70232. Adv. No. 95–7054.**

United States Bankruptcy Court, E.D. Oklahoma.

Feb. 1, 1996.

Basil V. Hicks, North Little Rock, AR, for Plaintiff.

James A. Conrady, Okmulgee, OK, for Defendant.

### ORDER DETERMINING DEBT TO BE NONDISCHARGEABLE

TOM R. CORNISH, Bankruptcy Judge.

The Court believes this to be a case of first impression in Oklahoma. What the Court must decide is whether, under the Bankruptcy Reform Act of 1994, the Debtor has the ability to pay a Visa card debt to a nondebtor

spouse which arose from a divorce decree and whether the benefit to the Debtor of obtaining a discharge outweighs the detriment to the nondebtor spouse. Today, the Court holds the Debtor should pay the debt.

## FINDINGS OF FACT

1. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. Mrs. McMurrough resides at # 27 Reservoir Heights Drive, Little Rock, Arkansas. She is 51 years old and has a B.S.E. from Henderson State University. She taught school for a few months and then worked for nine years for the State of Arkansas in child support enforcement.

3. Thereafter, she went to work in the family lumber company, Anthony Hardwood Lumber Company in Hope, Arkansas. She took care of the accounts payable and did the bookkeeping for the company. She worked there for approximately five years and left in 1985 when her youngest son graduated from high school.

4. Mrs. McMurrough moved to Little Rock and worked for Pleasant Valley Country Club doing bookkeeping part-time. She did not need to work full-time because she had a substantial inheritance and was financially secure. Her first marriage ended in divorce in 1967. In 1989, Mrs. McMurrough met and married the Debtor who was a car salesman. The parties were divorced on April 24, 1995. She worked at Pleasant Valley until the end of 1990, when she and the Debtor purchased an existing auto dealership from J.T. and Elizabeth Caplinger in England, Arkansas. All the funds were advanced by Mrs. McMurrough. She invested between $500,000.00 and $1,000,000.00 in the dealership. The Debtor operated the dealership. In February, 1992, the dealership went broke and this resulted in Slover Autoplex, Inc. filing bankruptcy in the Eastern District of Arkansas.

Both parties testified that the failure of the business was due to bad times, poor management decisions and the wrong location. After the closing of the auto dealership, Mrs. McMurrough went to work for a dentist and then went back to work for Pleasant Valley Country Club. Presently, Mrs. McMurrough is working for the State of Arkansas as a case worker in the child support division. She is paid bi-weekly and her take-home pay is approximately $538.11. She is currently on probationary status for six months, or until approximately May, 1996.

5. Mrs. McMurrough has chronic obstructive lung disease which is a form of emphysema. The disease is now in remission; however, she was hospitalized for various lengths of time in November and December, 1994.

6. Mrs. McMurrough is purchasing a condominium. Mrs. McMurrough owned this condominium prior to her marriage to the Debtor. She owes approximately $84,000.00 on the condominium and has approximately $8,000.00 equity. Mrs. McMurrough testified her gross monthly income from her salary is approximately $1,165.00. In addition, her roommate, a lady from her church, has been paying her $450.00 per month since November, 1995. Mrs. McMurrough receives a monthly dividend of approximately $110.00 from stock in a bank in Hope, Arkansas, and approximately $23.00 per month from interest on a farm note. Mrs. McMurrough owns approximately 27 percent in her family lumber company which is operated by her older sister and brother-in-law. However, she testified that in the last three years she has received no income from the company. Additionally, Mrs. McMurrough owns approximately 27 percent in a farm; however, again, she receives no income from the farm, other than the interest on the note payable to her. Mrs. McMurrough testified that the farm owes her approximately $5,000.00 and she believes the interest rate is 5.5 percent.

Mrs. McMurrough's total monthly income from all sources is approximately $1,748.00. Her living expenses are as follows:

| | |
|---|---|
| Mortgage payment and taxes | $ 689.16 |
| Condominium fee | $ 139.00 |
| Content insurance and personal property insurance | $ 42.00 |
| Medical expenses | $ 106.91 |
| Utilities | $ 197.58 |
| Cable (one-half) | $ 13.16 |
| Car payment | $ 318.99 |
| Car insurance | $ 49.11 |
| Gasoline | $ 50.00 |
| Food | $ 175.00 |
| Toiletries and miscellaneous | $ 50.00 |
| Total: | $1,830.91 |

7. Her budget includes nothing for phone, laundry or cleaning. She does her church's bookkeeping and is paid $100.00 per month less taxes. However, she testified that she is going to return that money to the church as her contribution. Her 1995 income was approximately $14,922.51. She has an IRA valued at $38,000.00.

8. The Debtor, John Slover, testified that he lives in Tulsa with a lady friend. He testified that, at the time of filing bankruptcy, he resided in Okmulgee, Oklahoma. The Debtor further testified that he graduated from high school and received a junior college equivalency from the University of Maryland while he was in the Marines.

The Debtor is not currently married. When asked by the Court how many times he had been married, he responded, "four times to five women, or five times to four women, whichever you prefer." The Debtor testified that he has an 18 year old daughter, who is still in high school and he pays child support in the amount of $200.00 per month. However, he testified that the Court Order only requires him to pay $100.00 per month. Further, he testified that he will voluntarily pay child support until his daughter graduates from college.

9. The Debtor has always been employed in the automobile industry. However, since the dealership went broke, he has not retained the same employment for more than a few months at a time. In September, 1995, he obtained employment at One Hour Acceptance which assists dealers in financing automobiles. His compensation was $500.00 per week plus expenses. He quit working for One Hour Acceptance because they were changing the rate of his compensation to $65 per car contract. Under the new compensation plan, he testified he would receive approximately $1,200.00 per month and the employer would require him to pay for his own cellular phone and pager in the amount of $400.00 per month. The Debtor is currently unemployed and has drawn state unemployment compensation of $232.00 per week since voluntarily becoming unemployed on November 23, 1995. The Debtor testified that he does not have an interest in a 401–k plan, an IRA or any military retirement.

10. The Debtor believes he has 11 or 12 weeks left to draw unemployment compensation. The Debtor's monthly expenses are as follows:

| | |
|---|---|
| Rent | $ 250.00 |
| Telephone | $ 40.00 |
| Food | $ 125.00 |
| Gasoline and car expenses | $ 100.00 |
| Car insurance | $ 50.00 |
| Child support | $ 200.00 |
| Car payment | $ 290.00 |
| Total: | $1,055.00 |

The Debtor testified that during 1995, he earned approximately $17,000.00 from all his employers. From the Debtor's schedules, it appears the Debtor earned $16,342.00 in 1994 and $8,505.00 in 1993.

11. Financial problems have beset Mrs. McMurrough since meeting the Debtor in 1989. Mrs. McMurrough had an inheritance of approximately $500,000.00 to $1,000,000.00. She used this money to purchase the car dealership. The Debtor put no money into the dealership. After the business closed, the parties owed Chrysler Credit approximately $250,000.00. Each party signed a personal guarantee of this debt on behalf of Slover Autoplex, Inc. Fortunately, Chrysler Credit has not yet sued either party. The Caplingers, the lessors of the real property on which the car dealership was located, have sued Mrs. McMurrough twice for damages as a result of the breach of the lease contract. The first suit resulted in a judgment in favor of the Caplingers against the parties and First Commercial Bank of Lonoke County. There is still $7,500.00 plus interest due on the first judgment. On January 12, 1995, the Caplingers sued the Debtor and Mrs. McMurrough for $32,950.00 plus costs and attorney's fees. The Caplingers will in all likelihood sue Mrs. McMurrough again on the balance of the lease which is accruing rent at $4,000.00 per month until February 28, 2000.

12. After the business closed, the parties separated. Mrs. McMurrough testified that when the Debtor left, she called the credit card company and reported the Visa Gold Card stolen. The Debtor contacted the Visa company and had a duplicate card sent to him after the parties had separated. The

Debtor even had the card sent to him via Federal Express. This card was originally used solely by the parties for business expenses associated with the dealership. However, after the business closed, the Debtor was traveling extensively and was charging all his expenses. At that time, the Debtor testified he was earning between $175.00 to $225.00 per day. Even though the Debtor was earning money to pay for his expenses, he was not using that money to pay the charges incurred. During the time frame of the Visa card purchases of $11,193.35, from January to December, 1994, there were payments made of $3,989.00, but it is not clear from the testimony who made the payments. Some of the charges from the credit card are as follows:

| | | |
|---|---|---|
| 2/18/94 | Edwin Watts Golf Shop, Ft. Walton Bch, FL | $ 266.94 |
| 3/9/94 | Hyatt Lodge, Belleville, IL | $5,607.62 |
| 3/10/94 | Nails by Jessica, Little Rock, AR | $ 15.00 |
| 4/8/94 | Steak & Ale, Tulsa, OK | $ 50.00 |
| 4/9/94 | Mondo's Italian Rest., Tulsa | $ 44.00 |
| 4/9/94 | Van Heusen Factory Out., Stroud, OK | $ 58.02 |
| 4/10/94 | Cherokee Nation Outpost, Roland, OK | $ 202.50 |
| 4/12/94 | Ramada Inn, Tulsa, OK | $ 228.13 |
| 4/24/94 | Fischers Restaurant, Belleville, IL | $ 25.00 |
| 4/24/94 | Hyatt Lodge, Belleville, IL | $ 166.20 |
| 6/4/94 | John D. McGurk's Pub, St. Louis, IL | $ 37.00 |
| 6/7/94 | Casa Gallardo Fairview Hgts., IL | $ 10.00 |
| 6/7/94 | Casa Gallardo Fairview Hgts., IL | $ 23.60 |
| 6/8/94 | Citgo 7239, Belleville, IL | $ 28.00 |
| 6/8/94 | Malonado, Inc.–Patricks Cafe Ellisville, MO | $ 7.62 |

The payments made on the credit card were as follows:

| | |
|---|---|
| January 21, 1994 | $ 500.00 |
| March 21, 1994 | $2,000.00 |
| April 21, 1994 | $ 300.00 |
| June 27, 1994 | $ 358.00 |
| July 28, 1994 | $ 358.00 |
| August 22, 1994 | $ 50.00 |
| August 31, 1994 | $ 423.00 |

13. Mrs. McMurrough testified that she never used this card. The Debtor testified that even the charge to Nails by Jessica was for his own use. Mrs. McMurrough testified that essentially there was no balance as of December, 1993. The parties executed an antenuptial agreement on July 20, 1989, which provided, as follows:

The Parties do hereby agree that during the marriage of the Parties Ms. McMurrough may, from time to time at anytime and any number of times be guarantor of payment or co-obligor on debt—including but not limited to credit cards, loans, lines of credit, and the like—which shall be incurred for the use and benefit of Mr. Slover. In any such event, Mr. Slover does hereby agree to indemnify and hold harmless Ms. McMurrough from any and all liability of every type and kind incurred or to be incurred by her on any such debt; including, but not limited to the prepayment in full to her of the costs, expenses and attorney's fees incurred or to be incurred by her with regard to the potential or actual enforcement against her of her obligation as guarantor of payment of or co-obligor on such debt.

The Amended Temporary Order issued in the parties' divorce proceeding, filed November 4, 1994, provided as follows:

1. The defendant [John Slover] is ordered and directed to maintain the Visa Gold credit card in a current state by making all monthly payments due on a timely basis and hold the plaintiff harmless from said indebtedness.

Further, the Divorce Decree filed on April 24, 1995 provided, in pertinent part, as follows:

4. Further, the Court finds that the defendant has failed and refused to satisfy the previous indebtedness due Visa, for which the plaintiff was given judgment against the defendant, in the sum of $11,193.35

## CONCLUSIONS OF LAW

■ A. Section 523(a)(15) of the Bankruptcy Code provides that an individual debtor is not discharged from a debt that is incurred by the debtor in the course of a divorce or separation or in connection with a

separation agreement, divorce decree or other order of the Court, unless:

(A) the debtor does not have the ability to pay such debt from the income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

B. The House Committee's Judiciary Report regarding § 523(a)(15) provided, in pertinent part, as follows:

In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

*Woodworth v. Woodworth (In re Woodworth),* 187 B.R. 174, 175 (Bankr.N.D.Ohio 1995).

■■■ C. Generally the creditor bears the burden of proof by a preponderance of the evidence with respect to most dischargeability actions. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the language in § 523(a)(15) has been described by courts as establishing a rebuttable presumption that any property settlement obligation arising from a divorce is nondischargeable unless the debtor can prove one of two things set forth in § 523(a)(15)(A) or (B). *In re Becker,* 185 B.R. 567, 569 (Bankr.W.D.Mo.1995); *Carroll v. Carroll (In re Carroll),* 187 B.R. 197 (Bankr.S.D.Ohio 1995).

D. There are few cases which have dealt with § 523(a)(15) since it was enacted by the Bankruptcy Reform Act of 1994.

E. In *Woodworth,* the Court noted that the debtor was unemployed and that the plaintiff had carpal tunnel syndrome and had been determined to be permanently partially disabled. *Woodworth* at 176. The plaintiff and defendant testified that neither one had the funds to pay the debts and if they had to do so, they would be unable to provide basic support for themselves. *Id.* The Court noted that the debtor would have to expend his funds reasonably necessary for his maintenance and support in order to pay the marital debts. *Id.* at 177. Thus, the Court found that the debtor had met the requirements of § 523(a)(15)(A). The Court noted that § 523(a)(15)(A) did not permit consideration of the fact that the nondebtor spouse did not have the ability to pay the debt either.

In *Woodworth,* the Court stated that the test under § 523(a)(15)(B) balances the relative benefit of discharging the debt with the harm caused to the nondebtor spouse. *Id.*

The Court stated that both of the parties in *Woodworth* were the subject of unfortunate financial circumstances and that the balancing test was difficult to apply. *Id.* The Court found that the debt could not be collected from either party and when considering the facts of the case in light of the legislative history, the balancing test of § 523(a)(15)(B) favored dischargeability. *Id.* at 178.

F. The Court in *Phillips v. Phillips (In re Phillips)*, 187 B.R. 363, 368–69 (Bankr. M.D.Fla.1995), *citing Hill v. Hill (In re Hill)*, 184 B.R. 750 (Bankr.N.D.Ill.1995), noted that the debtor's ability to pay under § 523(a)(15)(A) should be analyzed under the disposable income test. The Court further stated that the disposable income test analyzes whether the debtor's budgeted expenses are reasonably necessary. In *Phillips,* the Court found that the debtor proved by a preponderance of the evidence that he was unable to pay the debt pursuant to § 523(a)(15)(A). *Id.* at 369. The Court in *Phillips* then turned to § 523(a)(15)(B). The Court found that the benefit of the discharge to the debtor outweighed any detriment suffered by the nondebtor spouse. The Court noted that the nondebtor spouse testified that she had a secure job with steady income, lived in a large condominium and drove a new sports car. *Id.* The former wife in *Phillips* claimed her detriment was she could not afford to attend college. Also, she had to sell the marital home and was forced to work twelve-hour days. *Id.*

G. In *Carroll,* the Court found that the debtor's financial condition allowed him to make the payments without jeopardizing his ability to provide for himself or his dependents. *Carroll* at 200–01. After paying his expenses, the debtor had disposable income of over $400.00 per month. *Id.* at 201. The Court noted that even if the debtor had the ability to pay the debt, the debt could still be dischargeable if discharging the debt would result in a benefit to the debtor which outweighed the detriment to the nondebtor spouse. *Id.* The Court noted that it must review the totality of the circumstances when making such determination. *Id.* The Court found that the benefit of the discharge did not outweigh the detrimental consequences to the nondebtor spouse. *Id.*

H. In the instant case, Mrs. McMurrough has shown that the debt was incurred in connection with a divorce. Thus, the rebuttable presumption that the debt is nondischargeable has been established.

■ I. The Debtor must establish that he does not have the ability to pay the debt. The Debtor is now receiving unemployment in the amount of $928.00 per month. This Court may, however, consider the income that the Debtor is capable of producing. *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995).

■ J. The Debtor testified that had he not quit his job, he could have been making $1,200.00 per month. The Debtor testified that he would have to expend $350.00 per month for a cellular telephone and $50.00 per month for a pager. This Court does not believe that those expenses are necessary and feels they should not be included when determining the Debtor's disposable income. As a result, the Debtor is able to earn at least $1,200.00 per month. The Debtor enjoys good health and is quite personable. He has been able to consistently earn a good living over the years.

■ K. The Debtor testified that his expenses are $1,055.00 per month, which includes $250.00 per month for rent. The Court questions whether the Debtor actually pays his "roommate" money as rent. Additionally, the Debtor's daughter is in her last year of high school. Although the Debtor has agreed to pay child support until his daughter has finished college, he is not required to do so under Oklahoma law. Thus, in a few months, his disposable income will increase. Furthermore, the Debtor testified that he was only ordered to pay $100.00 in child support; however, he testified he is paying $200.00 per month. A person cannot pick and choose which debts he wishes to pay and pay more to those creditors while not paying others at all. The Court finds discharging this obligation would provide the Debtor with extra disposable income and thus, he has the ability to pay this debt.

■ L. Second, the Court must balance the equities between the parties. At the

time the charges on the credit card were incurred, the Debtor was working and earning $175.00 to $225.00 per day. However, he decided not to use this earned income to pay the charges as they accrued. The Court heard no testimony about how much of the Debtor's expenses were reimbursed by his employer during this time frame.

Mrs. McMurrough invested her entire inheritance into the auto dealership. When the dealership filed bankruptcy, she lost everything. She has never filed a personal bankruptcy. She earns $1,165.00 per month, receives income from her roommate, the farm note, the bank stock and her church. Mrs. McMurrough will and has agreed to pay the debt to the lessors of the property in the approximate amount of $60,000.00. Should harsh collection efforts be made by the Caplingers to collect the back and future rent on the car dealership, Mrs. McMurrough will in all probability be a prime candidate for Bankruptcy Code relief. She has been saddled with most of the debts of the marriage. When considering all the circumstances and fairness to the parties, the Court finds that, by a preponderance of the evidence, the detriment to the nondebtor spouse in this case outweighs the benefit of discharging the debt. Thus, this Court finds that the debt to Mrs. McMurrough is nondischargeable.

IT IS THEREFORE ORDERED that the debt owed to the Plaintiff is nondischargeable.