In re James Marvin **MORRIS**, Debtor.

Elizabeth **BODILY**, Plaintiff,

v.

James Marvin **MORRIS**, Defendant.

Bankruptcy No. 95–00335–A7.
Adv. No. 95–90116–A7.

United States Bankruptcy Court,
S.D. California.

April 3, 1996.

Richard R. Ravreby, Ravreby, Shaner & Gibson, Carlsbad, CA, for Plaintiff.

James Marvin Morris, San Diego, CA, in pro. per.

Ralph O. Boldt, Trustee, San Diego, CA.

### MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

Plaintiff Elizabeth Bodily (the "Plaintiff") has sued her former husband, James Marvin Morris (the "Debtor"), to have declared non-dischargeable an equalization payment of $8,542.68 which the Superior Court ordered the Debtor to pay the Plaintiff. The equalization payment was intended by that court to equalize the responsibilities for payment of debts as well as the division of property between the parties. The Plaintiff sues for nondischargeability under 11 U.S.C. § 523(a)(15).[1] This is a core matter under 28

---

1. Hereinafter, all code and section references refer to 11 U.S.C. §§ 101–1330 unless otherwise specified.

U.S.C. § 157(b)(2)(I) and the Court has jurisdiction to enter a final judgment subject to review under 28 U.S.C. § 158.

## I.  FACTUAL SUMMARY

The parties' dissolution judgment was entered November 16, 1994.[2]  In that judgment, the Debtor was directed to pay child support for the parties' minor daughter at the rate of $150 per month.  As the Plaintiff was earning slightly more than the Debtor, no spousal support was ordered.  Finally, the judgment directed the Debtor to pay one-half of the payments on two unsecured debts, the balances of which were included in the equalization payment.  After making various other adjustments, the court arrived at an overall equalization payment owed by the Debtor to the Plaintiff of $8,542.68.

The Debtor filed a Chapter 7 bankruptcy petition on January 13, 1995.  His Schedule of Current Income ("Schedule I") showed combined net monthly income of $2,612.26 and Schedule of Current Expenses ("Schedule J") listed total monthly expenses of $3,028.[3]

During cross-examination by the Plaintiff's counsel, the Debtor admitted that some of the expense items listed on Schedule J were overstated as he was no longer living in the Mulberry Tree Lane residence on the date he filed the petition.  However, it was also developed that he had other expenses not disclosed on Schedule J.  These included state and federal income taxes accruing postpetition, rent, and child support arrearages to the mothers of his two other minor children.

Additionally, although not quantifying these expenses for purposes of § 523(a)(15)(A), the Debtor testified on direct examination that he gives his "heart and soul" to his three children and supports them beyond the court-ordered support payments.  He sees them during the week and weekends, buys them clothes, and entertains them.  He flies his oldest son who lives in Redding, California back to San Diego for spring break, summer vacation and Christmas.  Last Christmas was the first Christmas in ten years the Debtor could not afford to fly his son home.

The Debtor has joint custody with the mothers of his other son and daughter who reside in San Diego.  While he would like to have his son and daughter spend some nights with him at the same time, because of his impoverished circumstances he cannot afford a larger apartment than the one he presently shares with a roommate.  Further, the Debtor testified he used to take his children on camping trips three or four times a year but has been unable to do so because of his financial condition.

With respect to the Plaintiff, on direct and cross-examination Plaintiff testified she owes not only over $37,000 in credit card debt but also has $41,000 in student loan obligations which matured in October and November 1995.  Although she steadfastly asserts that she will not be filing Chapter 7 bankruptcy herself, her net monthly income of $3,600 per month does not realistically appear to be sufficient to pay debts of this magnitude.

At the conclusion of trial, the Court ruled on § 523(a)(15)(A) and found the Debtor had the ability to pay $75 per month toward the equalization debt.  The Court took under submission its ruling with respect to § 523(a)(15)(B).  Thereafter, the Court requested supplemental briefs and scheduled a hearing for January 18, 1996 on the issue of whether the debt should be discharged under subsection (B).  At the January 18 hearing, the Court ruled the debt should be discharged.  The Court found the Debtor could just barely afford to pay the debt, and the detriment to the Debtor of paying the debt outweighed the benefit to the Plaintiff who would still be hopelessly in debt.  Since the issue is one of first impression for the Court, we have prepared this Memorandum Decision to further explain the reasoning.

## II.  DISCUSSION

■  Bankruptcy Code § 523(a)(15) was added by the Bankruptcy Reform Act of 1994[4] and is effective in cases filed on or

---

2.  Plaintiff's Exhibit 1.

3.  Plaintiff's Exhibits 2–16 and 2–17.

4.  The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (codified and amended in various sections of 11 U.S.C.).

after October 22, 1994. *In re Eastman,* 188 B.R. 621, 625 n. 9 (9th Cir. BAP 1995). Code § 523(a)(15) provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

As one colleague noted, "[T]he use of triple negatives in this subsection has turned an otherwise well-intended statute into sausage." *In re Hesson,* 190 B.R. 229, 237 (Bankr.D.Md.1995). One must reverse the negatives to comprehend it. The *Hesson* court reversed the negatives and interpreted the statute to mean as follows:

[T]he section can be read to make property settlements nondischargeable IF a debtor is able to pay those debts or IF a discharge would be to [sic] detrimental to the ex-spouse. Congress has decided that if a debtor is able to pay the debt owed to the ex-spouse without harming him or herself more than nonpayment would harm the ex-spouse, the debtor should uphold his or her separation obligation.

*Id.*

In its more intelligible form, the statute raises the following questions: (i) who has the burden of proof and what is the appropriate measuring date; (ii) what standard should be applied for determining the debtor's ability to pay; and (iii) may the debt be discharged where the Court finds the Debtor has the ability to pay.

## A. THE BURDEN OF PROOF AND MEASURING DATE

■ Neither the statute nor the parties squarely address the questions of burden of proof and the appropriate measuring date for applying §§ 523(a)(15)(A) and (B). With respect to the burden of proof, I adopt the reasoning of *In re Hill,* 184 B.R. 750, 754 (Bankr.N.D.Ill.1995) and shift the burden of proof to the Debtor. That is, once the Plaintiff demonstrates that the Debtor incurred the debt in connection with divorce, the burden shifts to the Debtor to prove subsections (A) and (B). The Court concurs with the *Hill* court that the burden shift amplifies the policy that even though the debtor is entitled to a fresh start, the debtor sometimes must show he or she deserves a fresh start with respect to a particular debt. *Id.* This approach accords with the overwhelming majority of courts that have subsequently considered the issue of burden of proof. *In re Florez,* 191 B.R. 112, 115 (Bankr.N.D.Ill. 1995) (citations omitted).[5]

■ However, I believe that the appropriate measuring date for making the analysis required by §§ 523(a)(15)(A) and (B) should be the time of trial. In adopting this date, I elect not to follow *Hill. Hill* held that for purposes of both subsections, the appropriate measuring date is the time of filing the complaint. *Hill,* 184 B.R. at 754. The *Hill* court did not explain the reason for selecting this date, except to observe that the date is later than the measuring date for cases brought under § 523(a)(5), which looks to the time of entry of the divorce decree. *Id.* at n. 13. Other courts have declined to follow *Hill* and instead looked to the time of trial. *In re Taylor,* 191 B.R. 760, 766–67 (Bankr.N.D.Ill. 1996); *Hesson,* 190 B.R. at 238.

In this Court's experience, the benefits of the "fresh start" to a person compelled to file

---

**5.** The minority view holds that the burden remains squarely on the plaintiff. *In re Butler,* 186 B.R. 371, 373–74 (Bankr.D.Vt.1995). The middle view holds that the debtor has the burden of showing inability to pay and the nondebtor spouse has the burden of showing the detriment outweighs the benefit. *Hesson,* 190 B.R. at 239.

Chapter 7 are not always immediate. All the recurring problems seen in Chapter 13 cases—loss of employment, aging cars breaking down, unanticipated and uninsured medical expenses and the like—frequently occur postpetition and should be considered in the §§ 523(a)(15)(A) and (B) analysis. Conversely, debtors sometimes encounter good fortune such as a better job or an entitlement that is not property of the estate, which should also be considered. Measuring the parties' financial positions at the time of trial enables the court to consider these changed events, and determine in its experience which events are bona fide. *See, e.g., In re Florio,* 187 B.R. 654, 657–58 (Bankr.W.D.Mo.1995) (finding the debtor's voluntary postpetition reduction of her income to zero was not bona fide and that she had more than adequate earning potential to pay the debt).

### B. *THE STANDARD FOR DETERMINING DEBTOR'S ABILITY TO PAY*

■ The Plaintiff contends that the standard for determining the ability to pay should be the standard used in connection with evaluating nondischargeability of student loans under § 523(a)(8). Student loans are nondischargeable unless they became due more than seven years before the petition date or excepting such a debt from discharge would impose an undue hardship on the debtor or the debtor's dependents. At the conclusion of trial, this Court rejected the student loan standard of "undue hardship" and applied the disposable income standard suggested in *Hill. Hill,* 184 B.R. at 754–55. Applying this standard, the Court concluded the Debtor had disposable income of $75 per month to pay toward the debt.

As *Hill* observed, the "ability to pay" language in § 523(a)(15)(A) mirrors language used in § 1325(b)(2) which is the "disposable income" standard used for considering objections to Chapter 13 plans.[6] It makes sense to apply the same standard to a section with identical language.

■ Most courts have followed *Hill*'s lead and applied the "disposable income" standard. *See, e.g., Hesson,* 190 B.R. at 237; *In re Carroll,* 187 B.R. 197, 200–01 (Bankr. S.D.Ohio 1995); *In re Phillips,* 187 B.R. 363, 368–69 (Bankr.M.D.Fla.1995). Other courts while applying the "disposable income" standard nevertheless adopt certain aspects of the student loan hardship discharge test. *In re Straub,* 192 B.R. 522, 528–29 (Bankr. D.N.D.1996); *Florio,* 187 B.R. at 657. The *Straub* court appears to believe that only by incorporating this test does it have the ability to consider the debtor's future ability to pay. *Straub,* 192 B.R. at 528–29. This Court declines to apply any aspect of the student loan test, finding that to do so merely confuses the analysis the Court is required to make. The appropriate standard is that of the debtor's "disposable income," a standard which already permits the Court to consider reasonably projectable future events known at the time of trial. *In re Anderson,* 21 F.3d 355, 357 (9th Cir.1994).

■ Finally, several recent cases have examined the debtor's listed expenses to determine whether they are reasonably necessary for support. *See, In re Owens,* 191 B.R. 669, 674 (Bankr.E.D.Ky.1996) (concluding the debtor's $845 monthly payment on a loan secured by his mother's house was not reasonably necessary for support); *In re Slover,* 191 B.R. 886, 892 (Bankr.E.D.Okla.1996) (concluding the debtor's monthly payments of $350 for the cellular phone, $50 for the pager, and $200 for voluntary child support were not reasonably necessary for support). In ruling on § 523(a)(15)(A), this Court similarly examined the Debtor's expenses and adjusted them to the amount reasonably necessary for support.[7]

---

6. Bankruptcy Code § 1325(b)(2) provides in pertinent part:

   For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
   (A) for the maintenance or support of the debtor or a dependent of the debtor; and
   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the con-

   tinuation, preservation, and operation of the such business.

7. At the time this matter was tried, the Court did not have the benefit of these subsequent opinions and was instead guided by the Ninth Circuit's opinion *In re Kelly,* 841 F.2d 908 (9th Cir.1988). In *Kelly,* the Ninth Circuit examined the debtor's expenses in the context of a motion to dismiss a Chapter 7 case for bad faith. In dicta the Ninth

## C. WEIGHING EQUITIES AFTER A FINDING OF ABILITY TO PAY

The Plaintiff contends that a finding of ability to pay under Code § 523(a)(15)(A) necessarily means the Debtor will be less harmed if forced to pay the equalizing debt; especially where the Plaintiff has no disposable income. She cites the *Carroll* and *Florio* decisions for support, both of which found the debtor had the ability to pay and used this fact to determine that discharge would be most detrimental to the nondebtor spouse. *Florio*, 187 B.R. at 658; *Carroll*, 187 B.R. at 201.

The Court finds the Plaintiff's cited cases distinguishable and observes the Debtor's ability to pay is only one of several factors considered for the "totality of circumstances" standard.[8] Specifically, in *Carroll* and *Florio*, the courts found the debtor had at least $500 in monthly disposable income and could easily afford to pay. *Florio*, 187 B.R. at 658; *Carroll*, 187 B.R. at 201. This is not the case here where the Court found the Debtor has very little disposable income and can just barely afford to pay $75 per month toward the $8,542.68 debt.

The Debtor's tight budget is a factor that weighs in favor of discharging this debt. *See Florez*, 191 B.R. at 116 (expressing concern that continued payment "nickels and dimes" the debtor, but not reaching the issue of equities for failure to argue equities). Particularly, where the nondebtor spouse is hopelessly in debt, the best solution is for both spouses to file bankruptcy. *In re Woodworth*, 187 B.R. 174, 176–78 (Bankr. N.D.Ohio 1995); *Hill*, 184 B.R. at 756.[9]

Like *Florez*, this Court in its ruling on the § 523(a)(15)(A) issue expressed concern that forcing the Debtor to pay the equalizing debt "nickeled and dimed" the Debtor and jeopardized his relationship with his children. While preservation of the Debtor's relationship with his children may not be considered under § 523(a)(15)(A), the Court gives significant weight to this factor under § 523(a)(15)(B). This factor tips the scale in favor of discharging the debt where the Court also finds the Plaintiff is hopelessly in debt.

The Plaintiff admits she has a monthly deficit of $461.29 without including other necessities which the Debtor included in his budget, and without budgeting for her $41,000 in student loans which matured in October and November, 1995. Even if the Plaintiff receives the $75 monthly equalization payment, she clearly cannot pay her debts. The Plaintiff is better off filing bankruptcy to deal with her debts. While admittedly a Chapter 7 filing would not discharge the Plaintiff's student loans, discharging her $37,000 credit card debt will place her in a better position to pay the student loans. Alternatively, she could deal with the student loans through a subsequent Chapter 13 filing.

## III. CONCLUSION

The Court holds the appropriate measuring date is the time of trial. This enables the Court to consider postpetition events as well as reasonably projectable future events known at the time of trial. The Court concludes the Debtor has met his burden of establishing the $8,542.68 equalizing debt should be discharged. Specifically, the Court finds the Debtor's modest budget just barely enables him to pay $75 monthly toward the equalizing debt. He should not be burdened with this debt where payment still leaves the Plaintiff with negative excess disposable in-

---

Circuit stated that budgeting $500 to dine out, entertain, buy toys and go to the movies is not reasonably necessary for support, and would render a Chapter 13 plan unconfirmable. *Id.* at 915 n. 9.

**8.** The parties and the Court agree the "totality of circumstances" standard is the proper standard for weighing equities under § 523(a)(15)(B). This standard considers the following nonexclusive factors: (i) the income and expenses of both parties; (ii) whether the nondebtor spouse is jointly liable on the debts; (iii) the number of dependents; (iv) the nature of the debts; (v) the reaffirmation of any debts; and (vi) the nondebtor spouse's ability to pay. *Hill*, 184 B.R. at 756.

**9.** The Court is aware of *In re Slover*, 191 B.R. 886, 892–93 (Bankr.E.D.Okla.1996), which excepted the debt from discharge even though the nondebtor spouse was a prime candidate for bankruptcy, but believes the equities in this case favor discharge.

come and hopelessly in debt. The Plaintiff is better off filing bankruptcy to deal with her debt.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Debtor is directed to file with this Court a judgment against the Plaintiff in conformance with this Memorandum Decision within ten days from entry hereof.