In re V. Douglas JODOIN, M.D., Debtor.

Christine C. SAMAYOA aka Christine
C. Jodoin, Plaintiff,

v.

V. Douglas JODOIN, M.D., Defendant.

Bankruptcy No. 94–29190–C–7.
Adversary No. 95–2135–C.

United States Bankruptcy Court,
E.D. California.

May 16, 1996.

Wayne A. Knight, Fairfield, California, for Plaintiff.

Nancy Page, Page & Sohnen, Walnut Creek, California, for Defendant.

## OPINION

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This adversary proceeding involves the interplay between 11 U.S.C. §§ 523(a)(5) and 523(a)(15) regarding the dischargeability of a $44,082 state court award in a marital dissolution. Although the parties have litigated on the assumption that only § 523(a)(15) applies, the evidence establishes that 97 percent of the state court's award constitutes nondischargeable support under § 523(a)(5).

Reasoning that the § 523(a)(5) issue is properly before the court in every § 523(a)(15) action as an essential element under § 523(a)(15) and that Federal Rules of Civil Procedure 15(b) and 54(c) also apply, a declaratory judgment will issue declaring that $42,844 is nondischargeable under § 523(a)(5) and that the balance of the award is nondischargeable under § 523(a)(15).

### Facts [1]

The litigants separated in 1990 and were divorced from each other in 1992 before the trial of the issues necessary to unravel their financial affairs. Soon after the state court decided those questions in 1994, the defendant commenced the chapter 7 bankruptcy case in which this adversary proceeding was filed.[2]

The defendant ("debtor") is a physician who practiced as a sole proprietor until the time of filing bankruptcy and who now is employed in another practice. The plaintiff is a registered nurse employed in a neonatal care unit. Both have remarried. Their child resides with the plaintiff. The debtor's new

spouse has two children, ages 16 and 12, who live in his household.

The state court judgment dealt with a number of aspects of the dissolution as to which the parties declined to agree and imposed a resolution of their financial affairs.[3] It awarded the marital residence to the plaintiff, the medical practice to the debtor, and miscellaneous items of personal property to one or the other. Offsets and credits were applied according to formulae prescribed by state decisional law that impose a method for untangling a marital community's financial affairs.

The debtor, after all debits and credits were applied, was required to pay to the plaintiff what is generically termed an "equalizing payment" of $30,520. In addition, the court ordered the debtor to pay $13,562 of the plaintiff's professional expenses. The total of required payments from the debtor was $44,082, none of which has been paid.

In reaching its judgment, the state court applied a credit in favor of the plaintiff in the amount of $42,884 that it attributed to unpaid "family support," which equates with spousal and child support. If the debtor had paid the $42,844 in support before the time of the judgment, then the debtor would have been entitled to a small equalizing payment from the plaintiff and may not have been required to pay a portion of the plaintiff's professional expenses.

The debtor is currently employed as a primary care physician in Rancho Mirage, California, at a salary of $125,000 per year, plus a bonus measured as a percentage of the amount by which his billings exceed $250,000 per year, plus medical insurance for himself and his new family at no charge to him. In addition, $7,200 per year is received as child

---

1. These constitute the findings of fact rendered pursuant to Federal Rule of Civil Procedure 52(a). *See* Fed.R.Bankr.P. 7052 (making Fed. R.Civ.P. 52 applicable to adversary proceedings).

2. Jurisdiction is founded upon 28 U.S.C. § 1334. This action under section 523 is a core proceeding. 28 U.S.C. § 157(b)(2)(I). To the extent it may not be a core proceeding, the parties are

nevertheless agreed that it may be heard and determined by a bankruptcy judge.

3. The litigiousness and rigidity that the debtor and his counsel have demonstrated, especially in discovery disputes, in this adversary proceeding is indicative of and consistent with the procedural history of the marital dissolution.

support for the two children who are resident in his current household.

Within three months after filing his bankruptcy case, the debtor acquired a newly-constructed residence in Palm Desert, California, for $300,000 on what he calls "an option" to purchase, making a $20,000 down payment ($15,000 from post-petition earnings and $5,000 loaned by a relative), paying $2,200 denominated as rent, and having the builder install "upgrades" (e.g. custom flooring) at extra expense. The option has been extended. Although he testified that he does not intend to close the purchase transaction until after this adversary proceeding is resolved, the court believes that he will complete the purchase regardless of the outcome. He and his spouse drive a 1994 Acura Legend and a 1993 Volvo 940 station wagon, which vehicles they lease for a total of $880 per month. Their telephone bill is $500 per month. The children attend private school. The family vacationed in a resort locale in 1995.

The plaintiff earns approximately $44,000 per year as an hourly employee who is not guaranteed forty hours of work per week. Her spouse is a self-employed real estate professional whose income in 1995 was negligible due to a poor real estate market. They also receive $710 per month as child support from the debtor. The family vacationed in a resort locale in 1995.

## Discussion [4]

### I

The first question is whether any portion of the $44,082 awarded to the plaintiff constitutes spousal and child support that would be nondischargeable under § 523(a)(5).[5]

### A

█ The salient fact is that the state court squarely attributed the sum of $42,844 to child and spousal support in the course of calculating its $44,082 award.

█ It is irrelevant that the unpaid support was subsumed within a judgment that distributed marital property. Whether an obligation arising out of a divorce is nondischargeable support under § 523(a)(5) is distinctly a question of federal law as to which the labels applied under state law are not binding. Rather, one must look behind the award that is made under state law and make a factual inquiry to determine, by a preponderance of the evidence, whether the award is actually in the nature of support. *Shaver v. Shaver (In re Shaver)*, 736 F.2d 1314, 1316 (9th Cir.1984); *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 681 (9th Cir. BAP 1994).

Applying the federal law inquiry to the state court judgment in this instance, it is evident that $42,844 of the award was in the nature of support for purposes of § 523(a)(5). The reasoning of the state court in determining the amount of support is explicit and establishes unambiguously that the sum was meant to represent past support and not some quasi-property allocation. The support obligation flowed through the calculus on a dollar-for-dollar basis. If the debtor had previously paid the $42,884 in support, no material equalizing payment would have been required, and this adversary proceeding would have been unnecessary. In other words, "but for" the debtor's failure to have paid an additional $42,844 in spousal and child support, the plaintiff's claim would be no more than the $1,138 difference between the $44,082 total award and the $42,844 support component.

█ As to the remaining $1,138, that sum is, for purposes of analysis, attributable to professional fees incurred by the plaintiff in litigating with the debtor in state court. The evidence here is equivocal. While it is logical that payment of a spouse's professional expenses of litigation is premised upon an economic imbalance between the parties and while there is reason to believe that this debtor and at least one of the counsel were

---

4. This discussion constitutes conclusions of law rendered pursuant to Federal Rule of Civil Procedure 52(a). *See* Fed.R.Bankr.P. 7052 (making Fed.R.Civ.P. 52 applicable in adversary proceedings).

5. All section references are to Title 11, United States Code, unless otherwise indicated.

especially litigious, the record made in this adversary proceeding is too thin to establish by a preponderance of the evidence that the requirement that the debtor pay professional fees is in the nature of support.

Accordingly, $42,844 of the $44,082 debt is nondischargeable spousal and child support pursuant to § 523(a)(5).

B

■ Having concluded that $42,844 of the obligation does constitute nondischargeable support still leaves the procedural problem of how to reach that result in an adversary proceeding that does not seek such a determination. The sole count in the complaint seeks a declaration of nondischargeability under § 523(a)(15); there is no count under § 523(a)(5).

Three reasons—one substantive and two procedural—independently warrant a judgment that $42,844 is nondischargeable support under § 523(a)(5) notwithstanding the parties' incorrect assumption that § 523(a)(5) does not apply.

1

■ First, § 523(a)(5) is, as a matter of law, necessarily in issue in every action prosecuted under § 523(a)(15). One of the essential elements of the cause of action under § 523(a)(15), as stated in that section's preambular language, is that the debt arising out of the marital dissolution is *not* § 523(a)(5) nondischargeable support.[6]

■ This yields a statutory structure in which § 523(a) divides all marital dissolution debts into two substantive categories of nondischargeability: (1) support that is nondischargeable under § 523(a)(5); and (2) all other marital dissolution debts, which are nondischargeable unless the conditions specified by 11 U.S.C. § 523(a)(15)(A) or (B) are satisfied.

Here, the plaintiff's evidence does not establish that the debt is not covered by § 523(a)(5). Rather, the preponderance of the evidence, by a wide margin, compels the contrary conclusion that $42,844 of the debt constitutes child and spousal support that is made nondischargeable pursuant to § 523(a)(5) rather than exposed to the § 523(a)(15) dischargeability analysis.

2

■ Next, Federal Rule of Civil Procedure 15(b)[7] provides another route to reach the § 523(a)(5) issue by deeming the pleadings amended to conform to the evidence. Rule 15(b) is construed liberally. 6A CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 1491 (2d ed. 1990) ("WRIGHT & MILLER"); 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 15.13[2] (1996) ("MOORE").

The question of whether any of the debt constitutes nondischargeable support under § 523(a)(5) was tried by implied consent of the parties in two respects. First, the negative of § 523(a)(5) was in issue when they tried the § 523(a)(15) action. And, evidence (the state court's written decision setting forth the basis for its calculations) that unmistakably established that $42,844 in unpaid support was subsumed within the state court judgment was admitted without objection. Accordingly, it is appropriate to require the pleadings to be amended to conform to the evidence. Fed.R.Civ.P. 15(b); Fed. R.Bankr.P. 7015.

3

■ Finally, Federal Rule of Civil Procedure 54(c)[8] affords another justification for reaching § 523(a)(5). The court is obliged to award the plaintiff the relief to which she is entitled under the evidence adduced at trial, so long as such relief is within the court's jurisdiction. Fed.R.Civ.P. 54(c);[9]

---

6. Section 523(a)(15) begins with the language: "not of the kind described in paragraph (5) [§ 523(a)(5)] that is incurred by the debtor in the course of divorce or separation ..." 11 U.S.C. § 523(a)(15).

7. Rule 15(b) applies in bankruptcy adversary proceedings. Fed.R.Bankr.P. 7015.

8. Rule 54(c) applies in bankruptcy adversary proceedings. Fed.R.Bankr.P. 7054(a).

9. Rule 54(c) provides, in pertinent part:
Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party is entitled, even if the party has not demanded such relief in the party's pleadings.

Fed.R.Bankr.P. 7054. It does not matter that the relief has not been requested. *See, e.g., Z Channel Ltd. Partnership v. Home Box Office, Inc.*, 931 F.2d 1338 (9th Cir.1991).

 The key qualification is that the failure to have demanded · the appropriate relief must not have prejudiced the adversary in the defense of the matter. 10 WRIGHT & MILLER § 2664; 6 MOORE ¶ 54.62. In this context, prejudice refers to lack of opportunity to present additional evidence to meet the unpleaded issue. Hence, prejudice has been found where forewarning would have led to additional evidence that was not otherwise relevant to the issues that were expressly raised in the pleadings. *Rivinius, Inc. v. Cross Mfg., Inc. (In re Rivinius, Inc.)*, 977 F.2d 1171, 1177 (7th Cir.1992). But prejudice has not been found to exist when the additional evidence would also have been relevant to the issues that were expressly raised. *Rental Dev. Corp. v. Lavery*, 304 F.2d 839, 842 (9th Cir.1962).

 Changing the basis for a determination for nondischargeability from § 523(a)(15) to § 523(a)(5) has an important practical consequence that does implicate the prejudice analysis. Debts that are nondischargeable under § 523(a)(5) cannot be discharged in a subsequent chapter 13 case. 11 U.S.C. § 1328(a)(2). Debts that are nondischargeable under § 523(a)(15) can be discharged in a chapter 13 case. *Id.* Thus, a former spouse's victory won under § 523(a)(15) may become pyrrhic when the debtor follows a chapter 7 case with a chapter 13 case to deal with the nondischargeable debt. *Cf. Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

Changing the basis for nondischargeability from § 523(a)(15) to § 523(a)(5) does not prejudice the presentation of the defense because any additional evidence that the defendant conceivably might wish to proffer is also relevant to the § 523(a)(15) theory that does

appear in the pleadings. *Lavery*, 304 F.2d at 842. Moreover, the defense was conducted with such vigor that it is difficult to imagine prejudice in a manner that would preclude application of Rule 54(c).

However surprised the parties may be to learn that $42,844 of the $44,082 is nondischargeable under a theory they did not argue, the court's finding of nondischargeability in a nondischargeability action cannot be said unfairly to change the litigation in a manner that precludes the court from awarding the relief to which the plaintiff is entitled.

## II

Turning to the § 523(a)(15) issues upon which the parties did focus in their pleadings and at trial, the court is persuaded that the full $44,082 covered by the judgment is nondischargeable.[10]

## A

 The plaintiff's prima facie case under § 523(a)(15) is easily established. The debt plainly was incurred by the debtor in the course of a divorce and was imposed by a court of record in that proceeding. Thus, the plaintiff has established these aspects of the prima facie case, which are required by the preambular language of § 523(a)(15).

As to the balance of the plaintiff's prima facie case, that the debt does not qualify under § 523(a)(5), it is appropriate to analyze the debt alternatively as if it were either $1,138 (= $44,082—$42,844) or $44,082. In all events, the sum of $1,138 is not a § 523(a)(5) obligation. And, if the $42,844 were held not to qualify under § 523(a)(5), the entire debt would be subject to scrutiny under § 523(a)(15).

## B

The next question is whether either subsection (A) or (B) of § 523(a)(15) operates in

Fed.R.Civ.P. 54(c).

**10.** The confusing text of § 523(a)(15) teems with issues of construction. Although some have been addressed in the host of § 523(a)(15) decisions by bankruptcy courts in other districts, appellate decisions have not yet emerged with final resolutions. The frequency with which the issues have been arising in this district in circumstances in which counsel must devote considerable effort to argue for and against the various constructions and their frequent observations on the record that guidance is needed, warrants setting forth this court's views on some basic issues in published form.

this instance to overcome the prima facie case.

### 1

 Even when the debt is shown to have been entered by a court of record in a divorce and not to be in the nature of alimony or support, the debt is discharged if the debtor either, per subsection (A), lacks the ability to pay or, per subsection (B), discharging such debt would benefit the debtor more than it would harm the plaintiff. 11 U.S.C. §§ 523(a)(15)(A) & (B).[11]

### a

The allocation of the burden of proof under these subsections has divided the courts among several camps. All of the approaches, however, yield the same conclusion in this instance.

 The divergence of opinion stems from the statute's disgraceful draftsmanship. The distinctly majority view holds that the debtor has the burden of proof on both subsections (A) and (B). *E.g., Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952 (Bankr. S.D.Cal.1996); *Collins v. Florez (In re Florez)*, 191 B.R. 112, 115 (Bankr.N.D.Ill.1995). A middle ground requires the debtor to demonstrate inability to pay and the creditor to show that discharging the debt would not result in a benefit to the debtor that outweighs the detriment to the creditor. *Collins v. Hesson (In re Hesson)*, 190 B.R. 229, 239 (Bankr.D.Md.1995). A minority holds the creditor has the burden on all issues. *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290 (Bankr.D.R.I.1996) (identifying weaknesses in majority rationale); *Kessler v.*

*Butler (In re Butler)*, 186 B.R. 371, 373–74 (Bankr.D.Vt.1995).

For purposes of analysis and for guidance to litigants pending eventual resolution of the debate, this court will adhere to the majority view as providing the best fit to the statutory language and apparent policies among three plausible analyses.[12] Both subsections (A) and (B) of § 523(a)(15) are drafted in terms of defenses rather than as substantive elements of nondischargeability. Although one ventures onto thin ice in arguing that Congress said what it meant and meant what it said in this clumsy statute, if Congress had meant to allocate to the plaintiff the burden on subsections (A) and/or (B), one would expect that § 523(a)(15) would have been drafted without "unless" clauses so as to make the debtor's ability to pay and the harm to creditor outweighing the benefit to the debtor essential elements of nondischargeability.

 The statute is best viewed as an effort to harmonize two competing policies. The rehabilitative policy of bankruptcy clashes with the more general federal policy of not upsetting domestic relations decisions of state courts. Intra-family obligations that have been established in marital dissolutions often involve delicate noneconomic issues that can be exacerbated by incautious application of bankruptcy relief.

 Under this view, Congress accommodated the clash regarding debts arising out of marital dissolutions with the following regime. Alimony and support obligations are nondischargeable. 11 U.S.C. § 523(a)(5). Other marital dissolution debts are rebuttably presumed to be nondischargeable. 11

---

**11.** Subsections (A) and (B) provide, in full, that the debt is discharged if:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15)(A) & (B) (1994).

**12.** The thoughtful critique of the majority view by the *Dressler* court raises factors of sufficient merit to make it uncertain that the majority view ultimately will prevail in the appellate courts. *Dressler*, 194 B.R. at 301–05. Although it must be conceded that there is merit to all three points of view, the deciding factor for this court is the conviction that § 523(a)(15) must be read as fundamentally an effort in the Bankruptcy Code to accommodate a powerful, competing nonbankruptcy policy.

U.S.C. § 523(a)(15). If the debtor cannot afford to pay, the presumption of nondischargeability is rebutted and the debt discharged. 11 U.S.C. § 523(a)(15)(A). If the debtor can afford to pay,[13] the debt is discharged only if the debtor demonstrates that the harm to the nondebtor resulting from dishonoring the debt is less than the benefit the debtor reaps from not having to pay. 11 U.S.C. § 523(a)(15)(B). This is a rational accommodation of the two policies.

Since competing policies appear to be in equipoise and since Congress did not signal any departure from the ordinary civil standard, the requisite *quantum of proof is preponderance of the evidence* as to the plaintiff's prima facie case and both defenses under §§ 523(a)(15)(A) and (B).

b

▮ The measuring date for assessing whether the debtor lacks the ability to pay, and for balancing the benefit and the burden of discharging the debt, is the time of trial, instead of the time of the filing of the petition. *Morris,* 193 B.R. at 952–53; *Dressler,* 194 B.R. at 300–01.

c

▮ The appropriate starting place for assessing lack of ability to pay is the chapter 13 "disposable income" standard that is used under 11 U.S.C. § 1325(b), which section contains language essentially identical to § 523(a)(15)(A). *Morris,* 193 B.R. at 953; *Dressler,* 194 B.R. at 304–05. But it is only a starting place.

First, the "disposable income" test needs to be applied in a modified fashion so that "disposable income" may be considered with an indefinite horizon in mind, instead of the three years that apply in chapter 13. 11 U.S.C. § 1325(b)(1)(B).

Second, the "disposable income" test should not be the exclusive test. Although "disposable income" ought to suffice in most cases where the considerations are purely financial, it does not function adequately with respect to nonfinancial factors that are fundamentally subjective, such as in the all-too-frequent instances of self-destruction that occur in divorces. Moreover, the nature of the judicial process makes the precise details of the "disposable income" test, especially the degree of latitude afforded courts in considering subjective or nonfinancial factors, inherently vulnerable to variations among judicial circuits that could persist indefinitely without rising to the level of "importance" to warrant resolution by the Supreme Court.[14]

▮ The sad reality of domestic relations cases is that subjective nonfinancial factors become important when spouses respond to the intense personal pain attendant to a failed marriage by refusing to work or by intentionally impairing their ability to earn income. For example, a board-certified anesthesiologist may stop working and allow his medical license to lapse,[15] or a surgical technician may quit to work in a dog-grooming business that produces no income.[16]

The "undue hardship" concept developed under § 523(a)(8) affords more latitude to entertain subjective factors than the "disposable income" test and functions better in situations where the debtor is engaging in sub-rational or self-destructive economic behavior. 11 U.S.C. § 523(a)(8); *Florio,* 187 B.R. at 657.

▮ Three important differences that become operative when the chapter 13 "disposable income" test is removed from the context of chapter 13 justify construing the factors relating to "ability to pay" under § 523(a)(15)(A) more flexibly than the same factors under § 1325(b) and justify looking

---

**13.** Note that the subsection (B) defense applies only if the debtor fails to demonstrate inability to pay.

**14.** Supreme Court review by way of certiorari is discretionary and is granted "only for *compelling* reasons," which include intercircuit conflict on an *"important* matter." Rule 10, Rules of the *Supreme Court of the United States* (emphasis supplied).

**15.** *Scholl v. Jenkins (In re Jenkins),* Ch. 7 Case No. 95–22571–C–7, Adv. No. 95–2421 (Bankr. E.D.Cal. March 4, 1996) (debtor held to have *ability to pay*).

**16.** *Florio v. Florio (In re Florio),* 187 B.R. 654 (Bankr.W.D.Mo.1995) (debtor held to have ability to pay).

to the § 523(a)(8) "undue hardship" concept for amplification where nonfinancial factors loom large.

First, as noted, the three-year horizon prescribed by § 1325(b)(1)(B) is not applicable in chapter 7 cases.

■ Second, the chapter 13 requirement that the plan have been "proposed in good faith" does not have an explicit chapter 7 analogue that is designed to police abuse. 11 U.S.C. § 1325(a)(3); *cf. Johnson*, 501 U.S. at 87–88, 111 S.Ct. at 2156.

■ Finally, unlike chapter 13, the balancing test of § 523(a)(15)(B) applies and functions as a limiting principle whenever the court concludes, for subjective nonfinancial reasons, that the debtor does not lack the ability to pay.

d

■ The § 523(a)(15)(B) balancing of benefit and detriment of discharging the debt applies if, and only if, the debtor does not lack the ability to pay. In other words, if the debtor lacks the ability to pay, the debt is discharged without further analysis and without consideration of balancing. But if the debtor does not lack the ability to pay, then whether the debt is discharged turns on the outcome of the balancing.

■ Since the balancing occurs only when the debtor does not lack the ability to pay, it follows that the debtor's ability to pay is no more than one factor to consider in what amounts to a "totality of the circumstances" standard for the balancing under § 523(a)(15)(B). *Morris*, 193 B.R. at 954 (debt discharged despite ability to pay).

■ The § 523(a)(15)(B) balancing test gives the court the flexibility to do justice, and even discharge the debt if appropriate under the circumstances, when the debtor has the ability to pay under § 523(a)(15)(A). Thus, the fact that the same financial factors viewed through the prism of § 1325(b) in a chapter 13 case may yield a different conclusion about ability to pay becomes irrelevant.

2

■ The court is not persuaded by a preponderance of the evidence that the debtor in this adversary proceeding lacks the ability to pay a debt of less than $44,082. He is employed at an annual salary of $125,000, with an opportunity to earn more. He has the capacity to purchase a new $300,000 residence, to lease late-model premium automobiles, and to pay $500 per month in telephone bills. He has the ability to pay his former spouse and has failed, by a wide margin, to carry his burden of proof under § 523(a)(15)(A). Indeed, the evidence demonstrates by more than a preponderance that the debtor does have the ability to pay.

■ In considering the balancing defense under § 523(a)(15)(B), the relevant inquiry into benefit and detriment in this instance primarily focuses upon the total economic situation of the parties in their new lives. One who is financially secure is better able to absorb the loss. Hence, the total income and assets of the plaintiff and her new spouse are relevant, as are the total income and assets of the debtor and his new spouse.[17]

■ A review of the facts set out above indicates that the plaintiff's economic resources and her capacity to earn are more limited than the debtor's. While the sum owed is about one-third of the debtor's income, it is equal to the amount that she earns in a year. Moreover, her spouse is a self-employed real estate professional whose 1995 income was negligible and whose prospects in a notoriously depressed (albeit volatile) industry are uncertain. In contrast, the benefit of the discharge to the debtor would merely facilitate a more prosperous lifestyle.

Here, viewed as a debt of $44,082, the balance under § 523(a)(15)(B) tilts markedly in favor of the plaintiff. Accordingly, the debtor has failed, by a wide margin, to demonstrate by a preponderance of the evidence that the benefit of discharge to him outweighs the detrimental effect that would be visited upon the plaintiff by allowing his debt

17. Discovery was permitted, over objection, into the resources of the plaintiff's new spouse. Such resources are within the scope of discovery under Federal Rule of Civil Procedure 26.

to her to be discharged. The preponderance of the evidence shows that discharging the debt harms the plaintiff more than it benefits the debtor.

Viewing the debt as $1,138 (the surplus over the nondischargeable support obligation), the evidence is more closely in balance. It is a sum that the debtor easily can pay from current funds or by cutting down on the $880 automobile leases and the $500 telephone bill. As to the balance of benefit and harm, the preponderance of the evidence (regardless of who has the burden) favors the plaintiff. While discharging $1,138 will not push her to the brink of bankruptcy, the material imbalance in their respective family incomes, makes $1,138 mean substantially more relatively to the plaintiff than to the debtor. Thus, neither § 523(a)(15)(A) nor (B) shields the debt from nondischargeability.

### III

■ Costs are not awarded to the prevailing party "as of course" in bankruptcy adversary proceedings because Federal Rule of Civil Procedure 54(d) has not been made applicable.[18] Instead, Federal Rule of Bankruptcy Procedure 7054(b) permits the court to award costs.[19] Since no particular standard is specified, it is a matter of discretion.

The strategy and tactics with which the debtor waged the defense of this adversary proceeding were expensive to himself and to the plaintiff and appeared to be out of proportion to what was at stake. Nor was it a close case on the merits. While debtor was entitled to present a vigorous defense, the court is not required to confer its approbation of unnecessary stridency by declining to award costs to the prevailing party. Accordingly, this is an appropriate occasion to award costs to the prevailing party. Fed. R.Bankr.P. 7054(b).

\*　　\*　　\*

18. Fed.R.Civ.P. 54(a)–(c) do apply. Fed. R.Bankr.P. 7054(a).

19. The rule provides:
(b) Costs. The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provide. Costs against the United States, its officers and

A judgment in a separate document, as required by Federal Rule of Civil Procedure 58 (incorporated by Federal Rule of Bankruptcy Procedure 9021), will issue.

agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court. Fed.R.Bankr.P. 7054(b).