**In re Alan H. KOONS, Debtor.**

**Patricia M. SHELLEM, Plaintiff,**

v.

**Alan H. KOONS, Defendant.**

**Bankruptcy No. 96–19304DAS.**
**Adversary No. 97–0001DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 18, 1997.

Sam S. Auslander, Collingdale, PA, for Debtor.

John L. Shearburn, Havertown, PA, for Plaintiff.

Arthur P. Liebersohn, Phila., PA, Trustee.

Frederic Baker, Ass't U.S. Trustee, Phila., PA, U.S. Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

This is an adversary proceeding ("the Proceeding") based upon new Bankruptcy Code § 523(a)(15). The facts of record establish that ALAN H. KOONS ("the Debtor") lacks the ability to pay the mortgage and credit card debts for which he agreed to hold his ex-wife, PATRICIA H. SHELLEM ("the Plaintiff"), harmless in a property settlement agreement between the parties, making our decision in favor of the Debtor rather easy to reach under § 523(a)(15)(A).

However, since this is our first decision under § 523(a)(15), we address several issues which have split the courts, deciding them mostly in favor of non-debtor plaintiffs. Spe-

cifically, we hold that debtors bear the ultimate burden of proving that either the § 523(a)(15)(A) exception or the § 523(a)(15)(B) exception applies, and that debtors' entire current financial situation, including the income of a co-habitant or new spouse, should be among the facts considered.

## B. PROCEDURAL AND FACTUAL HISTORY

The Debtor filed a voluntary individual Chapter 7 bankruptcy case on September 30, 1996. The Proceeding was filed by the Plaintiff, the Debtor's ex-wife, on January 3, 1997. After one continuance by agreement, the Proceeding was tried on March 4, 1997. The parties were accorded until March 17, 1997, to provide post-trial submissions.

At trial, the parties were the sole witnesses. They agree that they were married on February 7, 1977, separated in May 1994, and were divorced in January 1995. The sole issues before us arise out of a Property Settlement Agreement of December 8, 1994 ("the Agreement"), amicably negotiated between the parties with only the Plaintiff having the benefit of counsel. One issue involves the Debtor's agreement to hold the Plaintiff harmless on future payments on a purchase-money mortgage ("the Mortgage") secured by the parties' former marital home at 104 Glendale Road, Upper Darby, Pennsylvania ("the Home"). Pursuant to the Agreement, the Debtor purchased the Plaintiff's interests for $11,000, which sum was paid. The other issue arises out of the Debtor's agreement to hold the Plaintiff harmless on a joint Chevy Chase Visa credit card account ("the Account").

The Plaintiff, about 40 years of age, has been steadily employed over the past seven years as a retail manager by Sears, Roebuck & Co. ("Sears"). She nets about $1,400 monthly and the Debtor provides $200 monthly support for the parties' only child, a 17–year old son who is a high school sophomore. Her monthly expenses, which appears to have been conservatively budgeted, total about $1,800, approximately $200 in excess of her income. Her only asset of any value is a pension plan into which she has deposited

about $8,000. The Plaintiff indicated that she had prospects for advancement at Sears, but nothing definite, principally in light of her lack of a college degree.

The Plaintiff further stated that the parties' son also works part-time and in the summer at Sears, and earned about $5,000 in 1996. However, the son allegedly makes no contributions to his mother's household expenses.

The Plaintiff's greatest concern was her potential liability on the Account. The balance was only $3,500 when the Agreement was executed, but, because of the Debtor's use of the Account after the execution of the Agreement and accrual of finance charges, the balance has risen to approximately $7,500. There was, however, no indication that the Plaintiff had been actively pursued for payments on the Account, and she admitted that she had made no efforts to get her name off the Account or contest her liability on it with the creditor.

The Debtor, aged 46 years, admitted use of the Account after execution of the Agreement. His explanation for doing so was that he was not aware that this use of the card after the Agreement's execution would render the Plaintiff liable. He seemed genuinely apologetic for any such consequences which may have in fact transpired.

The Debtor further testified that he had abandoned the Home because he was unable to keep up the payments on the Mortgage. Since the couple at one time had over $20,000 equity in the Home, a deficiency claim against the Plaintiff on the Mortgage appeared unlikely. The Debtor testified that he had remarried on June 8, 1996, and moved into the home of his new wife and her two sons, aged 16 and 12 years.

The Debtor's income was adversely affected by an accident during the course of civilian employment at the Philadelphia Navy Yard in 1989. Thereafter, he has received workmen's compensation benefits which, with certain recent health insurance deductions, are presently fixed at $1,631 per month. His disability is apparently permanent.

The Debtor testified that he is nevertheless capable of doing "light" work and, as a

result, his brother, who is a district manager of Royal Auto Supply ("Royal"), has assisted him in obtaining a position as a manager trainee with Royal. He presently earns less than $1,631 monthly from this employment and, because his workmen's compensation benefits are reduced by any income he makes up to the amount of his benefits, his total income remains at $1,631 monthly. The Debtor indicated that his initial optimism at obtaining a higher-paying position as a Royal manager has been dimmed by the assignment of a specific management position for which he was training to another individual.

The Debtor reported monthly expenditures of $2,705.64, over $1,000 in excess of his monthly income. However, as the Plaintiff points out, the sum of his expenses, apparently due to an error in addition, is in fact $2,223.64. The itemized expenses included $712 towards his home mortgage and $511.56 for auto expenses, both of which entries the Plaintiff and this court questioned. The Debtor explained that he allocated one-half of the $1,400+ mortgage payment for which his new wife is liable and the family's utility costs as his expenses. The auto expense was described as a $366 payment to lease his own 1995 Chevrolet Monte Carlo and $145 towards a contract to purchase a 1991 Chevrolet for the parties' son, who lived with the Debtor prior to his remarriage in June 1996. The Debtor claimed that the son had damaged the car bought for him on several occasions and was therefore no longer permitted to use it, although the Debtor claimed that he had restored this vehicle to "driveable" condition. No other itemized expenses of the Debtor were questioned as legitimate. The Debtor has no pension or other savings plans.

The Debtor's new wife is employed two days weekly as a nurse, receiving approximately $1,000 monthly net pay, and also receives support payments of about $900 monthly for her sons. Those sums, though not itemized in a budget, are apparently exhausted by the other half of the mortgage payments and utility costs, food for her and her sons, and her car payments.

## C. DISCUSSION

The Plaintiff expressly based her claims that the Debtor should not be discharged from any of his liabilities under the Agreement, particularly his obligations to hold her harmless from liability on the Mortgage or the Account, solely on 11 U.S.C. § 523(a)(15), which provides as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—

. . . . .

(15) not of the kind described in paragraph (5) [involving nondischargeable alimony or support payments] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor; . . .

■ This Code section was added as part of a series of 1994 amendments to the Code, and is therefore a new section. It was among several 1994 amendments intended to make it more difficult for debtors to avoid domestic relations obligations in bankruptcy.

This Code section, being new, has not, to our knowledge, been construed as to any issues relevant to the Proceeding in any reported case in this Circuit or district. Cf. In re Harris, 203 B.R. 558 (Bankr.D.Del.1996) (only reported case construing § 523(a)(15)

located by us in this Circuit; holds principally only that § 523(a)(15) does not apply to a claim against a debtor by her spouse's counsel). Moreover, § 523(a)(15) is not the most clearly worded section. It includes what have been characterized as "triple negatives," *In re Morris*, 193 B.R. 949, 952 (Bankr. S.D.Cal.1996); *In re Hesson*, 190 B.R. 229, 237 (Bankr.D.Md.1995); and *In re Butler*, 186 B.R. 371, 373 (Bankr.D.Vt.1995), qualifying phrases, and the use of terms which are not used elsewhere in the Code. *See* R. Maloy, *Does the New Exception to Discharge in Bankruptcy Give the Marital Creditor a Benefit or a Trompe L'Oeil?*, 6 J.BANKR.L. & PRAC. 51, 76–109 (1996) (cited hereinafter as "Maloy"). It has been termed as a "pernicious creature" which causes the "private lives of a former couple who had agreed to separate forever" to be rehashed in the bankruptcy court. *Butler, supra*, 186 B.R. at 372. *But see* Maloy, *supra*, 6 J.BANKR.L. & PRAC. at 109–11 (§ 523(a)(15) has been successful in its purpose of giving the marital creditor an intended benefit in an area in which legislation is necessarily difficult to draft).

One particular area of controversy has been over which party has the burden of proof at various stages in a § 523(a)(15) proceeding. All authorities appear to agree that the non-debtor has the burden of proving that the debt was incurred in a divorce-related separation agreement and is not within the scope of 11 U.S.C. § 523(a)(5). *See, e.g., In re Campbell*, 198 B.R. 467, 472 (Bankr.D.S.C.1996); *In re Morris*, 197 B.R. 236, 241–42 (Bankr.N.D.W.Va.1996); and Maloy, *supra*, 6 J.BANKR.L. & PRAC. at 73 & n. 113. These matters are, however, rarely in dispute.

Most courts then hold that, given the language of § 523(a)(15), which appears to create a presumption of nondischargeability "unless" the conditions of subsections (A) or (B) are met, the burden then switches to the Debtor to prove that one of these two conditions exist. *See, e.g., In re Smither*, 194 B.R. 102, 106–07 (Bankr.W.D.Ky.1996); *In re Carroll*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995); and *In re Hill*, 184 B.R. 750, 753–54 (Bankr. N.D.Ill.1994). Refining that argument, the court in *In re Stone*, 199 B.R. 753 (Bankr.

N.D.Ala.1996), an encyclopedic decision which collects what appears to be nearly all of the § 523(a)(15) cases predating it, *id.* at 760–66, determines that § 523(a)(15) provides to an "exception within an exception," for which the burden must fall upon the debtor, citing *Hill v. Smith*, 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923). *Id.* at 780–81.

Other courts have emphasized that proof of the debtor's ability to pay and that the benefits to the debtor outweigh those to the nondebtor should lie with the debtor because the debtor has the most access to proof on these issues. *See, e.g., Campbell, supra*, 198 B.R. at 472–73; and *In re Becker*, 185 B.R. 567, 569 (Bankr.W.D.Mo.1995). *But see Stone, supra*, 199 B.R. at 779 (unimpressed with this argument; argues, without any apparent basis, that a former spouse is often in as good a position as the debtor to prove the debtor's ability to pay).

Several courts have dissented and held that the non-debtor bears the burden of proof as to all elements of § 523(a)(15), as in all other causes based on other sections of § 523(a). *See, e.g., Taylor v. Taylor*, 199 B.R. 37, 40 (N.D.Ill.1996); *In re Greenwalt*, 200 B.R. 909, 913 (Bankr.W.D.Wash.1996); *In re Willey*, 198 B.R. 1007, 1012–13 (Bankr. S.D.Fla.1996); and *In re Butler*, 186 B.R. 371, 373–75 (Bankr.D.Vt.1995). *But see Stone, supra*, 199 B.R. at 766–69 (analyzes burdens under other sections of § 523(a) and determines that the debtor has certain burdens under some other sections of § 523(a)). A few courts have opted for placing the burden upon the debtor to prove the elements of § 523(a)(15)(A), but placing the burden on the non-debtor to prove the elements of § 523(a)(15)(B). *See Morris, supra*, 197 B.R. at 243; and *Hesson, supra*, 190 B.R. at 238–39.

■ We believe that the reasoning of the cases placing the ultimate burden of proving the elements of both § 523(a)(15)(A) and § 523(a)(15)(B) on the debtor are the more persuasive. We are unimpressed with the argument that the placing of a burden on creditors generally under § 523(a) should overcome the specific language of § 523(a)(15), which creates a presumption in

favor of the creditor, or, as perhaps is better stated in *Stone, supra,* 199 B.R. at 780–81, establishes an "exception within an exception." We are also impressed with the argument that the *debtor* has far more access to information about his own income than the non-debtor despite *Stone's* skepticism on this point. To assume otherwise is to encourage the sort of intrusion into the other party's post-separation finances which the *Butler* court finds distasteful.

■ Particularly in a § 523(a)(15)(A) analysis, the matters at issue are closely analogous to those involved in determining whether a Chapter 13 debtor can overcome an objection to confirmation based upon 11 U.S.C. § 1325(b)(1)(B). *See, e.g., In re Jodoin,* 196 B.R. 845, 854 (Bankr.E.D.Cal. 1996); *In re Dressler,* 194 B.R. 290, 304–05 (Bankr.D.R.I.1996); *Hesson, supra,* 190 B.R. at 237; *Carroll, supra,* 187 B.R. at 200; *Hill, supra,* 184 B.R. at 755; and Maloy, *supra,* 6 J.BANKR.L. & PRAC. at 70–71. In applying § 1325(b)(1)(B), while the initial burden of providing evidence is on the creditor, the ultimate burden of proving that all disposable income is devoted to plan payments is on the debtor. *See In re Rothman,* 206 B.R. 99, 103–104 (Bankr.E.D.Pa.1997); *In re Pellegrino,* 205 B.R. 479, 483 (Bankr.E.D.Pa.1997); *In re Fricker,* 116 B.R. 431, 437 (Bankr. E.D.Pa.1990); and *In re Fries,* 68 B.R. 676, 685 (Bankr.E.D.Pa.1986).

While the *Hesson* court's analysis is supported by the observation that § 523(a)(15)(B) requires consideration of the non-debtor's economic status as well as that of the debtor, and hence that the *debtor* does not have superior access to proof of some relevant facts, the language still requires the debtor to establish that the benefits to the debtor outweigh the detriments to the non-debtor. In the words of the *Stone* court, it is part of the same "exemption within an exemption" parcel. While it might make sense to place the burden of proving certain relevant facts on the non-debtor, on balance we conclude that it makes the most sense to place the entire burden of proving all of the elements of both sections upon the debtor.

■ Several other issues have arisen in the reported cases which bear some relevance to the instant Proceeding. First, it is clear that §§ 523(a)(15)(A) and (B) are stated in the disjunctive. All courts noting this fact have concluded, contrary to the Plaintiff's apparent contention, that the Debtor will therefore prevail if he meets the burden of proving the elements of either one or the other. *See, e.g., Taylor, supra,* 199 B.R. at 40–41; *Harris, supra,* 203 B.R. at 561–62; *Willey, supra,* 198 B.R. at 1015; *In re Cleveland,* 198 B.R. 394, 400 (Bankr.N.D.Ga.1996); *Morris, supra,* 197 B.R. at 243–44; *In re Huddelston,* 194 B.R. 681, 686 (Bankr. N.D.Ga.1996); *Hill, supra,* 184 B.R. at 755; and Comment, *At the Intersection of Bankruptcy and Divorce: Property Division Debts Under the Bankruptcy Reform Act of 1994,* 17 COLUMBIA L.REV. 91, 110 (1997) (cited hereinafter as "Comment").

Second, most of the courts addressing the issue agree that the time of the trial is the point at which the relevant tests are applied. *See Willey, supra,* 198 B.R. at 1014; *Cleveland, supra,* 198 B.R. at 398; *In re Morris,* 193 B.R. 949, 952–53 (Bankr.S.D.Cal.1996); and *Hesson, supra,* 190 B.R. at 238. *But see Huddelston, supra,* 194 B.R. at 687–88 (criticizes use of any single period in arguing that the court must look to the parties' future economic prospects as well as their present financial status); and *Hill, supra,* 184 B.R. at 754 & n. 13 (measures from the date of the filing of the bankruptcy petition).

■ Finally, a few courts have held that, in determining the debtor's "ability to pay" the debt in issue, it is inappropriate to consider the income of a person with whom the debtor is living, *see Willey, supra,* 198 B.R. at 1014–15, or a new spouse of the debtor. *See In re Carter,* 189 B.R. 521, 522 (Bankr. M.D.Fla.1995). We agree with those courts holding, to the contrary, that all of the income of a debtor's immediate household is relevant to the debtor's ability to pay. *See Cleveland, supra,* 198 B.R. at 398–99; *In re Celani,* 194 B.R. 719, 721 (Bankr.D.Conn. 1996); *Smither, supra,* 194 B.R. at 102; and *Hill, supra,* 184 B.R. at 755.

■ While we therefore agree with most of the legal positions favoring the non-debtor,

the application of these principles clearly leads to our ruling in favor of the instant Debtor on the record before us here. The Debtor has met the burden of proving that, as of the time of trial, the income of both his new wife and him together did not reflect an ability to pay the debts for which he agreed to hold the Plaintiff harmless in the Agreement. The Debtor's monthly income is, even when the addition error is corrected and the son's dysfunctional automobile expense is deducted, more than $400 less than his monthly expenditures. Addition of the wife's income and expenses, though not set forth in detail, appear to be a "wash," i.e., her income of about $2,000 monthly appears to be exhausted by living expenses legitimately attributed to her.

The Plaintiff was unable to establish that any budget item except the monthly payments for the son's car were not legitimate. The total mortgage payment of about $1,400 monthly on the residence of the Debtor and his new wife does not appear excessive, even though the Plaintiff hinted (but did not prove) that the Mortgage payments on the parties' Home were less, and she suggested that the more modest Home might be sufficient for the Debtor's new family. However, the Debtor's decision to reside in his new wife's home, with her sons, appears to be the sort of personal decision resulting in non-extravagant additional expenses which we are not prepared to second-guess the Debtor for making. We also find that the Debtor's disability severely limits his upside potential for increased earnings, certainly as compared with the debtors in Huddelston, supra, 194 B.R. at 686–89; and In re Anthony, 190 B.R. 433, 438–39, reconsideration denied, 190 B.R. 429, 431–32 (Bankr.N.D.Ala.1995).

Although we need not reach the issue of whether the Debtor also met his burden of satisfying the criteria of § 523(a)(15)(B), it appears that he has done so. The benefit to the Debtor is the total discharge of an obligation for which he would otherwise be solely liable. The detrimental consequences to the Plaintiff are a very doubtful contingent liability on the Mortgage and a liability on the Account which, while not as unlikely to ripen as the Mortgage debt, is not clearly estab-

lished. The Debtor's post-Agreement use of the Account appears to be an unauthorized use of a credit card account. Liability for such unauthorized use is limited to $50. See 12 C.F.R. § 226.12(b)(1), and can be eliminated entirely if proper notification is provided to the card issuer. See 12 C.F.R. § 226.12(b)(3).

The Willey court further concludes, 198 B.R. at 1016. that § 523(a)(15)(B) may be satisfied by a showing that the non-debtor is judgment-proof and thus will suffer no detriment from being saddled with the debt which the debtor agreed to satisfy. It might also be said that the non-debtor could also file bankruptcy and eliminate the debt. However, these analyses appear to go too far, see Comment, supra, 97 COLUMBIA L.REV. at 118 (suggestion that non-debtor spouse should file bankruptcy referenced as an "alarming trend"), especially when applied to the instant facts. If the Plaintiff did file for bankruptcy, then the Debtor would be relieved of his hold-harmless obligation as well in any event. Insofar as the Plaintiff's judgment-proof status could be deemed a factor, we note that the Debtor will likely emerge from bankruptcy judgment-proof as well, thereby devaluing the benefit of his discharge of this debt. In any event, mere liability for an obligation appears a substantial detriment, as it may subject a debtor to very troublesome collection practices. However, we do note that the Plaintiff has not alleged subjection to any collection practices to date. Thus, despite our unwillingness to embrace much of the decidedly pro-debtor reasoning of Willey, we nevertheless conclude that the requirements of § 523(a)(15)(B), as well as those of § 523(a)(15)(A), appear satisfied by the instant Debtor.

We are unmoved by the arguments made by the Plaintiff in her post-trial submissions in addition to her misunderstanding of the term "disjunctive" and the unconvincing contention that the Debtor has the ability to pay all of the obligations arising from the Agreement. The first argument, conveniently omitting the portions underlined below, references the following legislative history:

In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for the reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. *In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged.* The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

140 CONG.REC. H 10,752, H 10,770 (daily ed. October 4, 1994) (section-by-section description), reprinted in 4 COLLIER ON BANKRUPTCY, ¶ 523.21, at 523–105 to 523–106 (15th ed. rev. 1996).

The argument made from this passage appears to be that, since hold-harmless agreements are within the scope of § 523(a)(15), the hold-harmless aspects of the Agreement should be automatically excepted from discharge under § 523(a)(15). This is followed by an argument that the Debtor's improper use of the Account after execution of the Agreement was a "flagrant breach" of the terms of the Agreement, thus subjecting the Debtor to denial of his discharge vis-a-vis the Plaintiff as a "punishment" to vindicate Plaintiff—"victim."

The difficulties with both of these arguments are that they overlook the underlined portions of the quoted legislative history, which provide that a debtor may be discharged from a property settlement if the debtor's financial means render the debtor unable to pay and the economic consequences to the non-debtor are less than those to the debtor. No other circumstances are to be considered. *But see* Comment, *supra,* 91 COLUMBIA L.REV. at 127–28 (suggests an important factor should be whether the debtor filed bankruptcy in "good faith;" however, this court is reluctant to extend that concept broadly to pre-petition conduct. *See In re Lilley,* 201 B.R. 725, 728–29 (Bankr.E.D.Pa. 1996)).

■ Therefore, we clearly agree that the hold harmless aspects of the Agreement are appropriate fare for denial of dischargeability under § 523(a)(15). Although the legislative history might not point in that direction, other obligations, in divorce-related property settlements, *e.g.,* the Debtor's liability to pay the $11,000 had he not paid it, are clearly covered by the language of § 523(a)(15). However, the Debtor can escape liability, since he has proven that he satisfies the relevant § 523(a)(15) "means test."

■ With respect to the charges of improper, illegal actions on the part of the Debtor, we note, first, that we found his explanation that he meant no harm to the Plaintiff convincing, and second, that this issue is irrelevant to application of the § 523(a)(15) "means test."

We therefore find that several of the Plaintiff's arguments are beside the only relevant point of whether the Debtor met his burden of proving the presence of the conditions set forth in either § 523(a)(15)(A) or § 523(a)(15)(B). Since we find that he has proven the existence of the elements of

§ 523(a)(15)(A) and probably could also have proven the conditions of § 523(a)(15)(B), if necessary, discharge of the obligations at issue is appropriate.

*D. CONCLUSION*

An order declaring the Debtor's obligations to the Plaintiff arising out of the Agreement dischargeable will be entered.