**In re Ellin Schecter HALPER, Debtor.**

**Robert HALPER, Plaintiff,**

**v.**

**Ellin Schecter HALPER, Defendant.**

**Bankruptcy No. 96–29610.**
**Adversary No. 97–2092.**

United States Bankruptcy Court,
D. New Jersey.

Sept. 16, 1997.

---

Levitt & Slafkes by Bruce H. Levitt, West Orange, NJ, for Debtor/Defendant.

Ravin, Greenberg & Marks by Larry Lesnik, Roseland, NJ, for David Menlow.

## OPINION

NOVALYN L. LESNIK, Bankruptcy Judge.

This matter comes before the Court on motion by David Menlow for entry of an order to quash a subpoena served on him by Robert Halper, the debtor's former spouse. Menlow asserts that the subpoena, which would require him to produce personal and corporate financial information such as tax returns, financial statements, and credit statements, is unduly burdensome and completely irrelevant to a determination of the

nondischargeability of the debtor's non-support divorce obligations under 11 U.S.C. § 523(a)(15).

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court for New Jersey, dated July 23, 1984. Moreover, this is a core proceeding under 28 U.S.C. 157(b)(2)(I).

### STATEMENT OF FACTS

Robert Halper ("Robert") and Ellin Halper ("Ellin") married on May 4, 1980 and divorced earlier this year. Ellin and her two minor children currently share a residence with David Menlow ("Menlow") in Livingston, New Jersey (the "Livingston Home"). Menlow and Ellin also have a financial arrangement, pursuant to which they share the expenses of their household.

On October 24, 1996, Ellin filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

On February 3, 1997, Robert filed the instant adversary proceeding against Ellin. Robert alleges, *inter alia*, that the parties entered into a Property Settlement and Support Agreement (the "Agreement") dated January 22, 1997, in which they agreed to settle their present and future property rights, interests, claims, and other obligations arising out of the marriage, and Ellin assumed sole responsibility for $80,000 in joint debt. The Honorable James B. Convery, Superior Court of New Jersey, Chancery Division, Family Part, incorporated the Agreement into a judgment of divorce dated January 22, 1997. Ellin denies these allegations.

Robert also alleges that Ellin: (1) knowingly made false statements and claims in her bankruptcy petition; (2) with intent to hinder, delay, and defraud him, concealed and transferred her property and property of the estate within one year of her bankruptcy petition filing; and (3) disposed of or failed to maintain adequate business records. In particular, Robert alleges that Ellin scheduled her jewelry and clothing at a reduced value, and failed to list numerous assets, including silver. Ellin denies these allegations as well.

On the basis of these allegations, Robert argues that: Ellin's obligations set forth in the Agreement are nondischargeable under 11 U.S.C. § 523(a)(5) and § 523(a)(15) and that the Court should deny Ellin's discharge pursuant to 11 U.S.C. § 727(a)(2), § 727(a)(4), and § 727(a)(3).

As part of his discovery effort, Robert served a subpoena (the "Subpoena") on Menlow pursuant to which he seeks the following documents: (1) federal and state income tax returns for 1994, 1995, and 1996; (2) all personal financial statements dated January 1, 1994, or after; (3) W-2, 1099, and K-1 forms for 1994, 1995, 1996; (4) all tax returns, financial statements, and balance sheets dated January 1, 1994 or after for any corporation, partnership, joint venture, or other business organizations in which Menlow has 5% or more ownership; (5) copies of any agreements or contracts entered into with Ellin during the period of December 1994 to the present, "which in any way relate to, or discuss any and all financial arrangements [with Ellin]"; (6) all post-January 1996 credit card statements; (7) "each and every bank statement including copies of all canceled checks on each and every bank account upon which you are a signatory from the period January 1996 until the present"; and (8) a copy of the homeowners' insurance policy for the Livingston Home.

In response to the Subpoena, Menlow filed the present motion for an order quashing the Subpoena. Menlow does not object to providing Robert with information regarding his financial arrangement with Ellin, details of their joint bank account for household expenses, or disclosing what funds Menlow has advanced to Ellin toward her share of such household expenses or other financial obligations. Menlow does object, however, to the remainder of Robert's requests.

Menlow advances several arguments in support of his position that the subpoena must be quashed. His primary objection is that his financial resources are not relevant to either a determination of the debtor's inability to pay under § 523(a)(15)(A), or a determination under § 523(a)(15)(B) that the detrimental consequences of the discharge on the non-debtor spouse are outweighed by the

benefit of the discharge to the debtor. In particular, Menlow points out that he is not the debtor's spouse and thus does not have any legally cognizable support obligation. Further, Menlow asserts that he should not be required to provide either personal or corporate tax returns, financial statements, or credit card statements, as production of such information is an undue. burden under F.R.C.P. 45(c)(3)(A)(iv) and requires him to reveal confidential information as that term is used in F.R.C.P. 45(c)(3)(B)(i). In response, Robert observes that he merely requests from Menlow the same information Ellin seeks to discover from him. Additionally, Robert contends that the income of a new spouse or live-in companion is relevant to determination of nondischargeability under both subsections of § 523(a)(15).

## DISCUSSION

The primary issue for resolution by the court is whether the court should consider the income of a live-in companion as part of its assessment of the debtor's ability to pay a non-support divorce obligation under § 523(a)(15)(A), or in connection with its determination under § 523(a)(15)(B) whether discharge of such an obligation results in a benefit to the debtor that outweighs the detriment to the former spouse or children.

To fully address the issue raised by the parties it is necessary to first focus on the statute, its purpose and the threshold considerations courts and litigants have encountered in its application. Congress included § 523(a)(15) in the Bankruptcy Reform Act of 1994 ("Reform Act") in order to provide for broader nondischargeability of divorce obligations. As stated in the Committee Report which accompanied the Reform Act:

Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The non-debtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the non-debtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a non-debtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the non-debtor spouse or because the non-debtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the non-debtor spouse that outweighs the debtor's need for a fresh start.

H. Rep. No. 103–835, 103rd Cong., 2d Sess. 54 reprinted in 1994 U.S.Code Cong. & Admin. News 3363. Interestingly, unlike § 523(a)(5) a party must timely commence an adversary proceeding to except such obligations from discharge. 11 U.S.C. 523(c)(1).

It appears from the foregoing legislative history that Congress sought to encompass two competing bankruptcy policies within the confines of a single subsection. On the one hand, § 523 exists to prevent a debtor from escaping liability for debts which should not be discharged as a matter of public policy. *In re Butler,* 186 B.R. 371, 372 (Bankr.D.Vt. 1995). On the other hand, as is well recognized, the overriding purpose of bankruptcy

is to provide an honest debtor with a fresh start. *Id.*

Unfortunately, perhaps reflecting the difficulties inherent in balancing these policies, the wording of the statute is somewhat awkward and imprecise. The lack of clarity in the statutory language has been the subject of comment by various courts. See *In re Koons*, 206 B.R. 768, 772 (Bankr.E.D.Pa. 1997) (and cases cited therein). As aptly observed by the court in *Butler*, "The use of triple negatives in this subsection has turned an otherwise well intended statute into sausage." 186 B.R. at 373.

In relevant part, § 523(a)(15) provides that an individual debtor may not discharge a debt:

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless -

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged, in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

■ To evaluate a debtor's "ability to pay" under § 523(a)(15)(A) courts have employed a variety of approaches. Many courts have found helpful the "disposable income" definition contained in § 1325(b)(2). *In re Hill*, 184 B.R. 750, 754–55 (Bankr N.D. Ill.1995); *In re Slover*, 191 B.R. 886, 892 (Bankr. E.D.Okla.1996); *In re Greenwalt*, 200 B.R. 909, 913 (Bankr.W.D.Wash.1996); *In re Windom*, 207 B.R. 1017, 1021 (Bankr.W.D.Tenn. 1997). Some courts have employed the "undue hardship" test developed under § 523(a)(8). *In re Comisky*, 183 B.R. 883, (Bankr.N.D.Cal.1995); *In re Straub*, 192 B.R. 522 (Bankr.D.N.D.1996). At least one court has examined the debtor's financial circumstances by applying both tests. *In re Florio*, 187 B.R. 654, 657–58 (Bankr.W.D.Mo. 1995) and yet other courts have embraced a test which requires examination of the totality of a debtor's financial circumstances and which also appears to incorporate elements of the "disposable income" and "undue hardship" tests. *In re Huddelston*, 194 B.R. 681, 687–88 (Bankr.N.D.Ga.1996); *Matter of Cleveland*, 198 B.R. 394, 398 (Bankr.N.D.Ga. 1996); *In re Smither*, 194 B.R. 102, 107–8 (Bankr.W.D.Ky.1996). In any event, as observed in *In re Jodoin*, 209 B.R. 132, 142 (B.A.P. 9th Cir.1997) the disposable income test is an "excellent starting point" for measuring a debtor's ability to pay.

In the context of confirmation of a Chapter 13 plan, most courts which have addressed the issue have concluded that a non—debtor spouse's income and expenses must be combined with the debtor's income and expenses in order to determine the debtor's disposable income which should be devoted to a plan. *In re Cardillo*, 170 B.R. 490, 491 (Bankr. D.N.H.1994); *Matter of Belt*, 106 B.R. 553, 561 (Bankr.N.D.Ind.1989); *Matter of Saunders*, 60 B.R. 187, 188 (Bankr.N.D.Ohio 1986); *In re Kern*, 40 B.R. 26, 29 (Bankr. S.D.N.Y.1984). The court in *Belt* also observed that the non-filing spouse's income has been considered by courts reviewing whether a debtor's student loan should be discharged due to undue hardship, and when determining whether a petition should be dismissed for substantial abuse. 106 B.R. at 562. *But see, In re Harmon*, 118 B.R. 68, 69 (Bankr.E.D.Mich.1990) (finding that debtor and non-filing spouse had an arrangement to split living expenses equally, and therefore, the debtor's net disposable income was properly calculated by deducting one-half of total family expenses from his after-tax income). The court was not able to find any reported case which included the income of a live-in companion in the calculus of a debtor's disposable income for plan payments.

In applying § 523(a)(15)(A), most courts have held that a debtor's new spouse's finances should be considered as part of a determination of the debtor's ability to pay.

*See Smither*, 194 B.R. at 108; *In re Adams*, 200 B.R. 630, 633–34 (N.D.Ill.1996); *In re Hill*, 184 B.R. 750, 755 (Bankr.N.D.Ill.1995). Some courts have extended this analysis to include consideration of a live-in companion's income. *See In re Cleveland*, 198 B.R. 394, 398 (Bankr.N.D.Ga.1996) (holding that when supplemental income from a live-in companion alters the debtor's financial situation, the court must factor the companion's income into § 523(a)(15)(A)'s "ability to pay" test); *Koons*, 206 B.R. at 773 (holding that all of the income of, a debtor's immediate household is relevant when determining the debtor's ability to pay).[1]

After noting that § 523(a)(15)(A) refers to those obligations that the debtor cannot satisfy "from income or property of the debtor not reasonably necessary to be expended for the maintenance or support," the *Cleveland* court reasoned that the inclusion of the "reasonably necessary" qualifier necessitates a two-part inquiry: 1) examination of debtor's income producing abilities; and 2) inspection of the extent to which that in come is necessary for the support of debtor and her or his dependents. *See Cleveland*, 198 B.R. at 399. The court concluded that it must consider the income of a new spouse or "spousal equivalent" in order to truly determine a debtor's "ability to pay" under § 523(a)(15). *See id.* "Absent considerations of a new spouse's income and its debt-absorbing impact upon the family's finances, no certainty may be had in the second line of inquiry, i.e., the Court cannot determine exactly what quantum of the debtor's own income truly is 'necessary' for the support of himself and his dependents." *Id.*[2]

Other courts have refused to consider the income of a debtor's live-in companion in determining the debtor's ability to pay under the meaning of § 523(a)(15). One court refused to consider the income of a debtor's

girlfriend, due to the fear that such consideration would "lead to a chilling effect on the courtship and re-marriage of divorced partners." *In re Willey*, 198 B.R. at 1015. *See also In re Carter*, 189 B.R. 521 (Bankr. M.D.Fla.1995) ("the language of 523(a)(15)(A) restricts the determination of the ability to pay solely to the income of the debtor. It is not enhanced by inquiring into the financial circumstances of the defendant's current spouse.").

■ This court agrees with the reasoning of those courts which find that consideration of all income that flows into a debtor's immediate household is relevant to the determination of a debtor's ability to meet his obligations under a property settlement agreement. As the court in *Cleveland* noted, the availability of other sources of income may relieve the debtor of the need to completely devote his income to his own support and that of his dependents. 198 B.R. at 399.

■ Moreover, this court believes that the determination of the benefit of the discharge to the debtor versus the detrimental consequences to the non-debtor former spouse which the court must make under § 523(a)(15)(B), mandates consideration of the income of a live-in companion's income. In *In re Gantz*, 192 B.R. 932, 936–37 (Bankr. N.D.Ill.1996) the court squarely addressed the question of whether a new spouse's income should be considered under this subsection. The court reviewed the statute and concluded that the language contemplates an expansive review of the parties circumstances. Further, recognizing the balancing of interests that must be undertaken, the court found that consideration of the totality of the circumstances is appropriate. *Id. See also, Celani*, 194 B.R. at 721 (where the debtor and/or the debtor's former spouse

---

1. Menlow emphasizes the "legal distinction" between a spouse and live-in companion. The courts in *Cleveland* and *Koons*, however, apparently found that such a distinction was irrelevant for the purposes of § 523(a)(15). *See Cleveland*, 198 B.R. at 399; *Koons*, 206 B.R. at 773.

2. In support of its reasoning, the *Cleveland* court broached the hypothetical situation of a debtor, with debts equal to or more than her or his own

income, who marries or becomes situated with an individual of greater wealth. *See Cleveland*, 198 B.R. at 399 n. 5. To confine its inquiry solely to the debtor's income in such a case, the Court stated, "would offend equity, for in reality all income generated by this hypothetical debtor would constitute discretionary or disposable funds and thus be suitable for application to his divorce-related obligations." *Id.*

285

have remarried, the financial circumstances of the new spouses logically and sensibly should be included). This court can discern no practical reason why the same analysis does not apply to the income of a live-in companion. The fact that a live-in companion may not have a legal obligation to contribute to the debtor's support is simply a factor to be considered, it is not a reason to deflect the inquiry.

However, in the matter at hand, the fact that the court finds it appropriate to inquire as to Menlow's income, does not mean that the scope of such inquiry is unrestricted. The debtor and Menlow have an agreement which establishes their respective responsibilities for household expenses. The court believes that this arrangement sets the parameters of discovery which Robert may require of Menlow. Thus, the court finds that subpoena items 5, 6, and 7, to the extent they request personal, rather than business records are appropriate categories for the production of documents. The court finds that items 1–4 of the documents requested in Robert's subpoena are overbroad and not relevant to the present performance or future performance of the financial arrangement between Ellin and Menlow. Thus, the court grants Menlow's request to quash as to those items.

Like the court in *In re Harmon*, 118 B.R. 68 (Bankr.E.D.Mich.1990) this court believes that in each case the question of available income must be evaluated on its own facts. In that regard, the fact that the parties have an agreement for the management of their household affairs should govern our understanding of their respective responsibilities, and further, should act to limit inquiry into the affairs of the non-debtor spouse.

Because Menlow's objections to the subpoena based on Fed.R.Civ.Pro. 45 are broad, conclusory and unsupported by any facts supporting a finding of undue burden or confidentiality, the court does not rely on the objections in reaching its decision.

*CONCLUSION*

Menlow's objection are sustained in part, and his request to quash the subpoena with respect to items 1–4 is granted. Document production shall be made by Menlow on the remaining items.