**In the Matter of Denise M. LEONARD.**

Civ.A. No. 98–6349.
Bankruptcy No. 98–18095.

United States District Court,
E.D. Pennsylvania.

April 6, 1999.

Lauren G. Buchanan, West Chester, PA, for appellee.

Joseph Michael Lamonaca, Chadds Ford, PA, for appellant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an appeal from the October 28, 1998 Order entered by Judge David Scholl of the United States Bankruptcy Court for the Eastern District of Pennsylvania discharging Denise M. Leonard (the "Debtor") from her obligation to pay her former husband, Kevin Leonard, the sum of $9,036.74. Kevin Leonard appeals. For the reasons which follow, we affirm.

### Factual Background

This matter has its origins in the divorce and custody proceedings between Denise and Kevin Leonard which were first instituted in the Court of Common Pleas of Chester County in 1992. In that action, which was docketed at No. 92–04562, an Order and Final Decree was entered by the Honorable James P. MacElree, II on December 14, 1994 divorcing the parties and equitably dividing their marital property 55% to the wife and 45% to the husband. As Mrs. Leonard then had more than her distributed share of marital property in her possession, Judge MacElree ordered that she pay the sum of $9,036.74 to Mr. Leonard. Although Denise Leonard appealed this decision to the Pennsylvania Superior Court, that Court affirmed the Chester County Court on December 15, 1995 and no further appeals were taken.[1]

Denise Leonard, however, never paid her former husband. As a result, Mr. Leonard was forced to file contempt petitions with the Chester County Court. On August 2, 1996, the debtor was ordered by that Court to pay Mr. Leonard in full by no later than December 14, 1996. Mrs. Leonard still refused and, on June 24, 1998, Chester County Judge Melody found her to be in willful contempt of the Orders of December 14, 1994 and August 2, 1996 and ordered that she be incarcerated at the county prison until she paid the money owed. That same date, Denise Leonard filed her petition for bankruptcy protection under Chapter 7.

On August 9 and 10, 1998, Mr. Leonard filed two motions for relief from the automatic stay as it applied to the state court's equitable distribution and custody orders in the Bankruptcy Court. In addition, Mr. Leonard filed an adversary action requesting that the Bankruptcy Court declare that the $9,036.74 awarded to him in equitable distribution by the Chester County Court was non-dischargeable pursuant to 11 U.S.C. § 523(a)(15). Following trial and hearing on the motions for relief from the automatic stay on October 27, 1998, Judge Scholl entered an order on October 28, 1998 entering judgment in favor of the debtor, denying the motions for relief from the automatic stay and determining that the $9,036.74 debt was dischargeable pursuant to 11 U.S.C. §§ 523(a)(15)(A). It is from this order that Kevin Leonard now appeals.

### Standard of Review

Under 28 U.S.C. § 158(a),

The district courts of the United States shall have jurisdiction to hear appeals

> (1) from final judgments, orders, and decrees;
>
> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time

---

1. In the custody part of the proceedings and via Order dated October 20, 1994, Mr. Leonard was awarded primary physical custody of the parties' only child, Evan. On May 3, 1996, Judge MacElree found Mrs. Leonard to be in willful contempt of this custody order, placed her on six months' probation and ordered her to pay Mr. Leonard $5,000.00 in counsel fees. These orders are at issue here only insofar as the appellant here challenges the application of the automatic stay to the petitions he filed to hold his ex-wife in contempt of them.

periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

 In hearing these appeals and in reviewing bankruptcy court decisions, the district courts apply a clearly erroneous standard to findings of fact, conduct plenary review of conclusions of law and must break down mixed questions of law and fact, applying the appropriate standard to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3rd Cir.1992), citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3rd Cir. 1989).[2] Appeals from decisions lifting, or refusing to lift, an automatic stay are reviewed for an abuse of discretion. *See: Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1231 (7th Cir.1990). *See Also: Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194 (3rd Cir.1991).

### Discussion

#### 1. Dischargeability of the debt.

 By his appeal, Mr. Leonard contends that the Bankruptcy Court erred in finding the $9,036.74 debt owed to him by his former wife to be dischargeable under 11 U.S.C. § 523(a)(15) and in not granting him relief to pursue contempt proceedings against her in the state court. Given that the courts must begin to evaluate challenges such as that presented here with the assumption that discharges are generally favored in bankruptcy, it is Appellant, as the complaining party, who bears the burden of proof in establishing that the debt in question is not dischargeable. *In re Hill*, 184 B.R. 750, 753 (Bankr.N.D.Ill.1995), citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Silberfein*, 138 B.R. 778, 780 (Bankr.S.D.N.Y.1992).

We begin our analysis, as did the bankruptcy court before us, by reviewing § 523(a)(15) of the Bankruptcy Code. Specifically, that section states, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of such expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.[3]

---

2. Fed.R.Bank.P. 8013 is in accord:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

3. Section 523(a)(5), in turn, reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

In this case, neither Mr. nor Mrs. Leonard appears to be disputing that the debt at issue is one which arose out of the court's equitable distribution of their marital property nor is there any argument that the debt owed is for alimony, maintenance or support. Consequently, we find that the debt owed by Mrs. Leonard to her ex-husband falls squarely within the parameters of § 523(a)(15) and we therefore turn now to the question of whether either of the two exceptions enunciated in subsections (A) and (B) of that statute have been met.

■ In light of the general principle underlying Section 523(a) that debts incurred "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court . . ." are not dischargeable, it must be noted that the burden of proving either (A) that the debtor does not have the ability to pay the debt or (B) that a discharge would result in a benefit to the debtor which would outweigh the harm to the spouse, former spouse or child if the debt were discharged, shifts to Mrs. Leonard, as the debtor. *In re Koons*, 206 B.R. 768, 772 (Bankr.E.D.Pa.1997); *In re Hill, supra*, 184 B.R. at 753–754. The "ability to pay" test focuses on whether the debtor's budgeted expenses are reasonably necessary. Many courts, including those in this district, are reluctant to impose their own values on the debtor, and exclude only luxury items and obvious indulgences, while others have held that only those expenses for basic

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . . .; or
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

4. Indeed, as Fed.R.Bank.R.P. 8006 makes clear, it is up to the parties and the appellant in the first instance to determine what portions of the record before the Bankruptcy Court it wants this Court to see. We therefore can only review the Bankruptcy Court's rulings and findings on the basis of the materials before us. While the record here includes a copy of a statement on the debtor's account with Prime Bank reflecting a balance of $31,208.53 as of March 7, 1995, that same document shows a balance of $0 as of October 20, 1998. Similarly, there is also a copy of a check to George Finney who, we are told is the debtor's father, for the amount of $58,000.

needs not related to the debtor's former status in society or accustomed lifestyle should be allowed. *In re Hill*, 184 B.R. at 755, citing *In re Navarro*, 83 B.R. 348, 355 (Bankr.E.D.Pa.1988) and *In re Reyes*, 106 B.R. 155, 157 (Bankr.N.D.Ill.1989). It has similarly been held that all of the income of a debtor's immediate household is relevant to the debtor's ability to pay. *In re Koons, supra*, 206 B.R. at 773 citing, *inter alia, In re Celani*, 194 B.R. 719, 721 (Bankr.D.Conn. 1996).

■ Likewise, among the factors to examine in determining whether the benefit of a discharge outweighs the detrimental consequences to the non-debtor former spouse, are the income and expenses of both parties; whether the nondebtor spouse is jointly liable on the debts, the number of dependents, the nature of the debts, the reaffirmation of any debts and the nondebtor spouse's ability to pay. *In re Hill*, 184 B.R. at 756.

■ Applying all of the foregoing to the case at bar and following review of the record on appeal, we cannot conclude that the Bankruptcy Court's findings were clearly erroneous or that its application of the law and legal conclusions here were improper or unsupported. Indeed, it appears to this Court that the debtor lives with her parents who provide her with some monetary support, although the extent of that support cannot be gleaned from the record before us.[4] We cannot determine from the record on appeal whether Mrs. Leonard is employed or is

That check, however, is drawn on an unidentified individual or entity's account at Crusader Savings Bank, and is dated May 15, 1992. While appellant argues that this evidence, as well as the transcript from a Chester County Court hearing on his ex-wife's attorney's petition to withdraw his appearance on her behalf for non-payment of counsel fees, purport to show her ability to pay the debt, we cannot so find. The time for determining a debtor's ability to pay is as of the time of the bankruptcy hearing, which was held in October, 1998. *See, e.g., In re Koons*, 206 B.R. at 773 citing *In re Willey*, 198 B.R. 1007, 1014 (Bankr.S.D.Fla.1996). While we would agree with Mr. Leonard (and with the Chester County Court of Common Pleas) that Mrs. Leonard at one time had the ability to pay $9,036.74, we cannot disagree with the finding of the bankruptcy court that that time has passed.

employable, what her present living expenses are or whether they are reasonable and necessary or whether there is anyone else who is dependent upon her for support. We therefore defer, as we believe we must, to the findings of the bankruptcy judge, who had a presumably more complete record and the opportunity to see and evaluate the credibility of the parties and the witnesses for himself. We thus can find no basis upon which to overrule Judge Scholl's finding that the debtor does not appear able to pay the appellant from her current income or assets.

Additionally, since Mr. Leonard does not take issue with the bankruptcy court's finding that he and his new wife earn in excess of $80,000 per year, we shall apply that finding to our decision here as well. In so doing, we must therefore agree with the bankruptcy court that the benefit of a discharge to the debtor clearly outweighs the benefits to the appellant from denial of a discharge. As both subsections (A) and (B) to § 528(a)(15) have been satisfied here, we affirm the finding that the debt is dischargeable.

## 2. Relief from the automatic stay.

Mr. Leonard also asserts that the bankruptcy court erred in denying his motions for relief from the automatic stay so as to allow his petitions for contempt of the equitable distribution and custody orders to proceed in the state court. Again, following our review of the law and the record before us, we cannot agree with this argument either.

■ The filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor. *In re Roberge*, 188 B.R. 366, 368 (E.D.Va.1995). As a general rule, the automatic stay applies to all claims, even those that may be excepted from discharge; in this regard, the scope of the stay is broad. *In re Montana*, 185 B.R. 650, 652 (Bankr.S.D.Fla. 1995); 11 U.S.C. § 362(a). There are, exceptions, however, and included among these are actions or proceedings for the establishment or modification of orders for alimony, maintenance or support and for the collection of alimony, maintenance or support from property that is not property of the bankruptcy estate. 11 U.S.C. § 362(b)(2)(A)(ii), (B).

■ Additionally, the bankruptcy court may lift the stay "for cause." 11 U.S.C. § 362(d)(1). Because the Bankruptcy Code provides no definition of what constitutes "cause," courts must determine when such discretionary relief is appropriate on a case-by-case basis. *In re Roberge*, 188 B.R. at 368 citing *In re Robbins*, 964 F.2d 342, 345 (4th Cir.1992). The courts have recognized that in domestic matters it is often necessary to lift the automatic stay, so as to facilitate a quick resolution of domestic issues and allow the debtor a fresh start. *See: In re Simeone*, 214 B.R. 537, 544 (Bankr.E.D.Pa. 1997). Among the factors which may be considered in determining whether a state court should be allowed to decide a domestic matter, are (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. *Roberge v. Buis*, 95 F.3d 42 (4th Cir.1996); *In re Robbins*, 964 F.2d at 345.

■ Here, of course, the equitable distribution proceedings between these parties were long ago concluded and thus the only issues pending in the state court were with respect to whether Mrs. Leonard was wilfully contemptuous of the Chester County Court's orders of May 3, 1996, August 2, 1996 and June 24, 1998 by failing to pay the $9,036.74 equitable distribution award and $5,000 awarded to appellant for counsel fees in enforcing the custody order of October 20, 1994. The automatic stay has generally been applied to civil contempt proceedings. *In re Mickman*, 1993 WL 128147 (Bankr.E.D.Pa. 1993); *In re Cherry*, 78 B.R. 65, 69 (Bankr. E.D.Pa.1987); *In re Clark*, 69 B.R. 885 (Bankr.E.D.Pa.1987). Insofar as the premise of any contempt proceedings ongoing as of the bankruptcy filing clearly involved the debtor's ability to pay the prior judgments

entered against her, we believe the bankruptcy court properly exercised its discretion in refusing to lift the automatic stay in this case.

We therefore find no basis upon which to overrule the bankruptcy court's Order of October 28, 1998 and it shall be affirmed pursuant to the attached order.

### *ORDER*

AND NOW, this 6th day of April, 1999, upon consideration of the Appeal of Kevin Leonard to the Bankruptcy Court's Order of October 28, 1998 declaring the $9,036.74 debt owed to Appellant by the debtor to be dischargeable, it is hereby ORDERED that the Bankruptcy Court's Order of October 28, 1998 is AFFIRMED for the reasons set forth in the preceding Memorandum Opinion.