In re Bruce Roy CLINTON, Debtor.

Bruce Roy CLINTON, Plaintiff,

v.

GREAT LAKES HIGHER EDUCATION CORP., Defendant.

Bankruptcy No. 1–89–02141.
Adv. No. 90–0082.

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 20, 1991.

Philip R. Joelson, Toledo, Ohio, for plaintiff.

Lloyd J. Blaney, Madison, Wis., for defendant.

## OPINION AND ORDER DISCHARGING DEBT

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for trial upon plaintiff's complaint to determine dischargeability of debt. Upon consideration of the evidence adduced at trial, the court finds that said debt should be discharged.

## FACTS

On August 1, 1989, Debtor filed his voluntary petition under chapter 7 of title 11. Thereafter, on March 14, 1990, Debtor filed the instant complaint to determine dischargeability of debt claiming that the indebtedness due defendant Great Lakes Higher Education Corporation, representing an insured or guaranteed education loan, is dischargeable, pursuant to 11 U.S.C. § 523(a)(8)(B), as it imposes an undue hardship on the Debtor.

Prior to trial, the parties stipulated that the balance owed defendant is $2,760.45 in principal and $388.73 in accrued interest at 11.49% as of August 19, 1990. Plaintiff testified that he is 33 years old and currently has a three year old dependent daughter from an earlier marriage; his daughter lives in St. Joseph, Michigan. Since June 15, 1990, he has worked for Allright Auto Parts, Inc. as a cashier, currently earning $4.25 per hour for a basic 40 hour week. He also works available overtime. He has no other sources of income and owns no real estate. Plaintiff graduated from high school in 1976 and served in the United States Navy from September, 1979 until November, 1984. Although plaintiff has held several jobs, earning as much as $7.50 per hour, most of his jobs have paid minimum wages. See Exhibit 1. Plaintiff's total wages for 1990 was approximately $12,000. See Exhibit 4.

Plaintiff also testified that since January, 1991, he has lived with his girlfriend in a duplex owned by her and her sisters. In this way, plaintiff is able to share expenses of food, approximately $60 per week, electricity, currently outstanding in an amount in excess of $500, and heating. He does not pay rent. Plaintiff drives a 1975 Buick LaSabre that he bought for $500 which he borrowed from his mother. Child support payments are deducted from plaintiff's check every two weeks in the amount of $44.56; $45.00 is deducted once a month for his daughter's insurance coverage. Additional expenses of plaintiff include gas for transportation to work, $20 per month for clothing, and $10 per week for laundry.

Plaintiff's monthly expenses are in excess of $660. *See* Exhibit 2.

Plaintiff stated that he does not go to movies, but eats out once a week at a cost of $10 to $15. Although he is entitled to visit his daughter two times a month, he only sees her about once a month when his ex-wife drops off their daughter at his mother's house. He cannot financially afford to drive to St. Joseph, Michigan, nor can he depend upon his car for that three hour trip.

Currently, plaintiff is seen by Brenda Jones, a case manager of the Community Mental Health Agency at least once every other month. Plaintiff has been a client since 1988 and has, upon occasion, been hospitalized for severe depression. However, as a result of plaintiff's financial inability, a minimum charge for these services is paid by him. Additionally, necessary medical prescriptions are provided free due to plaintiff's financial status.

Although plaintiff received a federal refund for 1990 in the approximate amount of $385, all those funds were used to pay for a household emergency, a malfunction of the water system.

The loan extended by defendant to plaintiff was used by plaintiff to attend semi-truck driving school. Plaintiff passed this course and received his certification in November, 1988, although he spent extra time in this course as a result of his poor progress. Plaintiff spent two days as a driver, but lacked confidence in his abilities and sought employment elsewhere.

Plaintiff's mother, Doris Clinton, testified that plaintiff lived in a rental property owned by her from January, 1989 to January, 1991. Although the rent was $200 per month, Mrs. Clinton opined that plaintiff paid her between $700 and $800 for this two year period. She also loaned him money during this time. Mrs. Clinton also paid some of the utilities bills associated with this property. Sometimes, Mrs. Clinton stated, she would drive plaintiff to visit his daughter in Michigan, expending her own money for the trip and driving her own car, as plaintiff was without either.

## DISCUSSION

Section 523(a)(8) of title 11 excepts from discharge an educational loan guaranteed by a governmental unit. However, the parties dispute whether such a loan may be discharged as imposing "an undue hardship on the Debtor and the Debtor's dependents." 11 U.S.C. § 523(a)(8)(B). " 'Undue hardship' is not defined by the Code, but is left to the discretion of the court." *In re Correll*, 105 B.R. 302, 305, 21 C.B.C. 1164 (Bkrtcy.W.D.Pa.1989) (citation omitted). *See also Matter of Coleman*, 98 B.R. 443, 446, 19 B.C.D. 258 (Bkrtcy.S.D.Ind.1989). As a result this court must examine the facts and circumstances of this case to determine if repayment of the loan would impose an undue hardship. *Correll*, 105 B.R. at 304 (citations omitted). Three tests have been developed in determining whether an undue hardship exists.

> The mechanical test focuses on the Debtor's expenses and future financial resources to determine if Debtor's income is sufficient to support the Debtor and his dependents at a minimal standard of living, as well as fund repayment of the student loan.

> \*    \*    \*    \*    \*    \*

> The second inquiry is into the good faith of the Debtor which examines the Debtor's efforts to obtain employment, minimize expenditures, and maximize resources.

> \*    \*    \*    \*    \*    \*

> The third test is the policy test whereby the court attempts to determine whether discharging the student loan would frustrate the Congressional policy underlying 11 U.S.C. § 523(a)(8)(B).

*Correll*, 105 B.R. at 305, 306.

Other relevant factors include:

1) Total incapacity now and in the future to pay one's debts for reasons not within the control of the Debtor.

2) Whether the Debtor has made a good faith effort to negotiate a deferment or forbearance of payment.

3) Whether the hardship will be long-term.

4) Whether the Debtor has made payments on the student loan.

5) Whether there is permanent or long-term disability of the Debtor.

6) The ability of the Debtor to obtain gainful employment in the area of study.

7) Whether the Debtor has made a good faith effort to maximize income and minimize expenses.

8) Whether the dominant purpose of the bankruptcy petition was to discharge the student loans.

9) The ratio of the student loan to the total indebtedness.

*In re D'Ettore*, 106 B.R. 715, 718 (Bkrtcy. M.D.Fla.1989).

Plaintiff testified as to some of his monthly expenses. *See supra* pp. 96–97. This testimony is consistent with those monthly expenses set forth in Exhibit 2. Upon review of these amounts, the court finds that Debtor's monthly expenses are both credible and minimal, totaling approximately $660. Plaintiff's net pay from July 9, 1990 through January 20, 1991, Exhibits 3 and 3A, total approximately $4,157; this amount represents about $640 per month ($640 × 6.5 months = $4,157) available for payment of expenses. Plaintiff's monthly expenses exceed his monthly income; no monies remain for repayment of the loan due defendant. Additionally, these pay stubs reflect overtime hours ranging from 0 to 43.50 hours per two week pay period. Based upon the mechanical test, plaintiff's income, including overtime pay, does not permit repayment of the loan in issue.

Defendant's counsel opined that some duplicity existed in plaintiff's listing of expenditures. Indeed, plaintiff lists child support payments of $89.12 in his current monthly expenses. Exhibit 2. Plaintiff's pay stubs reflect deduction of these payments before net pay. Exhibit 3. Notwithstanding this duplication, the court finds that the debt should be discharged.

Plaintiff has been steadily employed since 1976. Although these jobs represent minimum wage jobs, the court finds that plaintiff has, in good faith, attempted to maximize his resources and minimize his expenditures. He currently lives rent free with his girlfriend eliminating his rental or mortgage payment. Plaintiff testified that he is unable to visit his daughter because he has neither the money nor the means of transportation to travel to her residence. *See supra* pp. 96–97. Based upon this inquiry, the court finds that plaintiff's loan should be discharged.

Additionally, plaintiff's counsel stated that plaintiff has, through his bankruptcy, discharged approximately $12,733 in unsecured debt, of which the instant debt represents $3,149. Discharging of the debt in issue does not present the abuse at which § 523(a)(8) is aimed. That is, Congress' concern in enacting this section was

with "a few abuses of the bankruptcy laws by Debtors with large amounts of educational loans, few other debts, and well-paying jobs, who have filed bankruptcy shortly after leaving school and before any loans became due. . . .

This legislative history indicates a Congressional policy of excepting discharge in those inequitable situations where Debtors with superior education and employment skills were intentionally abusing the fresh start policies afforded by the bankruptcy laws."

*Correll*, 105 B.R. at 304 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 133 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6094).

Plaintiff has demonstrated good faith efforts to maximize his employment opportunities and minimize his expenditures. Additionally, it appears plaintiff did not file this petition in order to discharge student loans from which he was able to obtain a "well-paying job." The court finds, then, that the debt in issue should be discharged. It is therefore

ORDERED that plaintiff's debt to defendant Great Lakes Higher Education Corp. be, and it hereby is, discharged.