Hunt v. NH Higher Ed. Asst. Fdn.      CV-99-164-B    09/22/99

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Kimberly A. Hunt**

    **v.**                                      Civil No. 99-164-B

**N.H. Higher Education
Assistance Foundation**


MEMORANDUM AND ORDER


Kimberly A. Hunt filed a voluntary Chapter 7 petition for bankruptcy in January 1998.  Approximately four months later, she filed a complaint in the United States Bankruptcy Court for the District of New Hampshire seeking to discharge her student loan debts.  The bankruptcy court denied Hunt's complaint on February 17, 1999.  This appeal followed.  For the reasons set forth below, I reverse the decision of the bankruptcy court.


I.

Hunt attended Hesser College between 1990 and 1994.  She sought an associate's degree in paralegal studies, but left

school early when her second son was born.  Hunt has no plans to return to school.

Hunt financed her education with a series of student loans. She made regular monthly payments of $60 when her loans first became due.  She later reached an agreement with her lender to reduce her monthly payment to $24.  Hunt currently owes almost $5,000 on her student loans.

Hunt is a divorced mother of two young boys and was pregnant with a third child when the bankruptcy court ruled on her discharge request.  At the time of the bankruptcy court trial, Hunt lived with her two sons and her boyfriend, the father of her unborn child, in Manchester, New Hampshire.  The couple shared expenses, splitting rent and other monthly household bills equally.  Hunt's boyfriend did not otherwise contribute to the support of her children.  Nor did he pay any of Hunt's personal bills.  She testified that she did not know how much he earned.

Hunt's ex-husband has been ordered to pay $432 in child support each month.  His payment history, however, is sporadic, at best.  Despite five court enforcement actions, Hunt's ex-husband still owes approximately $4,000 in back child support.

Hunt stipulated prior to trial that a reasonably accurate estimate of the child support she actually received was $375 per month.

Hunt has worked for the past eleven years as a waitress at the Aloha Restaurant in Manchester. She stipulated at trial to gross monthly wages of $829 in 1994, $541 in 1995, $625 in 1996, $683 in 1997, and $700 in 1998. Hunt had no assets other than an anticipated federal income tax return of approximately $4,000. Although she listed a car as an asset in her bankruptcy filings, she sold the car for $300 after moving from Epping to Manchester.

When Hunt lived in Epping, she received food stamps and heat assistance. She continued to receive public assistance at the time of the trial in the form of Medicaid, child care, prenatal care, and legal services. The monthly value of these benefits is not stated in the record.

The court determined that Hunt's monthly expenses were $980.[1]

---

[1] Hunt filed a corrected Schedule J that listed monthly expenses of $1,055.00. At trial, however, she stated that she no longer was obligated to pay $185 per month for automobile insurance. She also testified that she failed to report $110 in monthly child care expenses. When these adjustments are taken into account, Hunt's monthly expenses are $980.

## II.

The Bankruptcy Code provides that an individual debtor is not entitled to be discharged from any debt

> (8)  for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C.A. § 523(a)(8) (West Supp. 1999).[2]

> To establish "undue hardship," a debtor must show:

> (1) that [she] cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987) (per curiam); see also Garrett v. New Hampshire Higher Educ. Assistance Found. (In re Garrett), 180

---

[2]  Congress amended § 523 in 1998.  When Hunt filed her petition, the undue hardship exception was codified at 11 U.S.C. § 523(a)(8)(B) (1994).

-4-

B.R. 358, 362 (Bankr. D.N.H. 1995) (adopting three-part test set forth in Brunner).

The bankruptcy court applied the Brunner test in rejecting Hunt's undue hardship claim. The court found that Hunt had made good faith efforts to repay her loans, but concluded that her debts should not be discharged because she failed to prove either that she would be unable to maintain a minimal standard of living if she were required to repay the loans or that her allegedly minimal standard of living was likely to continue for a significant portion of the repayment period. To support its conclusion regarding Hunt's ability to maintain a minimal standard of living, the court pointed to Hunt's reported gross monthly income of either $1,075 or $1,142, depending on how her child support payments were determined, and her monthly expenses of only $980. The court also discounted Hunt's claim that her income placed her below the federal poverty line because Hunt lived with her boyfriend and his income had not been taken into account in determining her standard of living. With respect to Hunt's future financial condition, the court relied on Hunt's concession that her situation had improved somewhat in recent

months.  The court also stated that without "evidence of the third-party income, it's even harder for me to make those determinations."  Trial Tr. at 33.

## III.

Bankruptcy Rule 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.  Conclusions of law by the bankruptcy court are reviewed *de novo*.  See <u>Gamble v. Gamble (In Re Gamble)</u>, 143 F.3d 223, 225 (5th Cir. 1998); <u>Realty Portfolio, Inc. v. Hamilton (In Re Hamilton)</u>, 125 F.3d 292, 295 (5th Cir. 1997).  Although a bankruptcy judge's factual findings must be upheld unless clearly erroneous, his application of those facts to the "undue hardship" test of §523(a)(8)(B) requires conclusions about the law that are properly reviewed by the district court using the *de novo* standard.  See <u>Brunner</u>, 831 F.2d at 396.  I apply these standards to the issue Hunt raises on appeal.

## IV.

Giving due deference to the bankruptcy court's findings of

-6-

fact, I nevertheless conclude that reversal is required because: (1) the court improperly rejected Hunt's request in part because she failed to produce evidence of her boyfriend's income and (2) the court failed to account properly for several facts which bear materially on the resolution of the undue hardship issue.

First, the court improperly concluded that Hunt was not entitled to have her loans discharged because she failed to supply the court with information concerning her boyfriend's income. Other courts conducting the undue hardship analysis have focused exclusively on the debtor's own employment and income prospects; they have not factored into the undue hardship determination income from a third party not legally required to provide financial assistance to the debtor.[3] See, e.g., Dennehy

_____

[3] Some courts do consider the income of the debtor's live-in companion when determining the debtor's ability to pay. See, e.g., In re Crosswhite, 148 F.3d 879, 889 (7th Cir. 1998) (holding that bankruptcy court erred by not taking into account debtor's live-in girlfriend's contribution to household expenses and extent to which it improved debtor's economic picture); Halper v. Halper (In re Halper), 213 B.R. 279, 285 (Bankr. D.N.J. 1997) (allowing in adversary proceeding challenging discharge of non-support divorce obligation non-debtor spouse to subpoena from debtor spouse's live-in companion financial documents relating to couple's respective responsibilities for household expenses). Halper, however, stressed that such an inquiry is fact specific; the particular arrangement between the parties also dictates the scope of the inquiry into the live-in companion's affairs. See Halper, 213 B.R. at 285 ("[I]n each case the question of available income must be evaluated on its own facts. In that regard, . . . that the parties have an agreement for the

-7-

v. Sallie MAE (In re Dennehy), 201 B.R. 1008, 1012 (Bankr. N.D. Fla. 1996) (focusing exclusively on debtor's employment prospects in applying undue hardship test even though evidence established debtor and his girlfriend shared living expenses); Clinton v. Great Lakes Higher Educ. Corp. (In re Clinton), 133 B.R. 96, 98 (Bankr. N.D. Ohio 1991); cf. Willey v. Willey (In re Willey), 198 B.R. 1007, 1015 (Bankr. S.D. Fla. 1996) (refusing to consider girlfriend's income in determining debtor's ability to pay marital obligations to former spouse in part due to concerns that such a policy would chill courtship and re-marriage of divorced partners). Indeed, the court in Clinton, instead of penalizing the debtor for living in his girlfriend's home rent-free, cited it as evidence of his good faith attempt to minimize expenses.

management of their household affairs should govern our understanding of their respective responsibilities, and further, should act to limit inquiry into the affairs of the non-debtor spouse."); see also In re Crosswhite, 148 F.3d at 889 n. 17 (noting that bankruptcy court, when determining the degree of economic interdependence between debtor and live-in companion, should "consider such factors as the period of time the individuals have lived as a single economic unit and the degree to which they have commingled their assets"). These cases do not require a different result in the instant case. I have taken into account Hunt's boyfriend's contribution to household expenses and its impact on her current and future standard of living. Hunt only reported her share of the monthly household expenses on her Schedule J. Even when her boyfriend's contributions are taken into account, Hunt, neither presently nor in the future, will be able to pay her student loans.

See Clinton, 133 B.R. at 98.

In this case, no evidence was produced to suggest that Hunt's boyfriend had a legal obligation to support her. Furthermore, only minimal significance can be attached to his voluntary assumption of responsibility for half of the household expenses. This fact, at most, entitled the bankruptcy court to inquire as to the extent of that support. The boyfriend's contribution to Hunt's support could be discerned from the record because Hunt disclosed her share of their combined household expenses and testified that her boyfriend paid an equal amount. Therefore, the bankruptcy court could not deny her request for discharge on the ground that Hunt failed to supply relevant information concerning her boyfriend's income.

Second, although the bankruptcy court correctly found that Hunt's monthly gross income slightly exceeds her monthly expenses, it failed to consider several facts which materially bear on Hunt's current ability to maintain a minimal standard of living. To begin, the bankruptcy court erred in failing to consider the unreliability of Hunt's receipt of child support payments, a significant source of her monthly income. While the record contains a stipulation that $375 represented a reasonable estimate of the monthly child support which Hunt actually

received, it also reveals that Hunt repeatedly had to sue her ex-husband to compel him to pay his child support obligation. In addition, the bankruptcy court failed to consider other facts which indicate the precariousness of Hunt's current financial condition. In particular, the court did not take into account that Hunt (1) is eligible for Medicaid and other forms of government assistance, (2) lives near or below the federal poverty line,[4] and (3) has no significant assets. It was error not to include these facts in the undue hardship analysis.

Finally, the bankruptcy court erred in finding that Hunt did not meet the second prong of the Brunner test. The court's error lies in its failure to consider Hunt's limited earning capacity and the impact the birth of her third child will have on her financial condition. Taking these factors into account points to only one conclusion: Hunt's minimal financial condition is likely

---

[4] The 1998 federal poverty guidelines consider a family of three as living below the poverty line if the family unit's gross income is below $13,650. See Annual Update of the HHS Poverty Guidelines, 63 F.R. 9235, 9236-37 (Feb. 24, 1998). I agree with the bankruptcy court that it may be somewhat misleading to apply the poverty guidelines to Hunt without regard to the support she receives from her boyfriend. Nevertheless, even if this assistance is taken into account, it is evident that Hunt's standard of living is minimal at best.

to persist during a significant portion of the repayment period.[5] As a result, Hunt satisfies all three requirements of the undue hardship test.  Her student loans should be discharged.

## V.

The bankruptcy judge's decision is reversed and Hunt's student loans are hereby discharged pursuant to 11 U.S.C. § 523(a)(8).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 22, 1999

cc:  M. Elaine Beauchesne, Esq.
     J. Christopher McGuirk, Esq.
     Timothy P. Smith
     George Vannah, U.S. Bankruptcy Court

---

[5]  That Hunt's boyfriend will be under a legal obligation to support her third child does not dictate a different result.  Her resources will continue to be barely adequate to provide for herself and her other two children.